**KENION v. GILL, Superintendent, D. C. Penal Institutions.**

No. 9189.

United States Court of Appeals
District of Columbia.

Argued March 26, 1946.

Decided April 22, 1946.

Messrs. Harry T. Whelan and Herbert P. Leeman, both of Washington, D. C., for appellant.

Mr. Sidney S. Sachs, Assistant United States Attorney, of Washington, D. C., with whom Mr. Edward M. Curran, United States Attorney, and Mr. George E. McNeil, Assistant United States Attorney, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and CLARK· and PRETTYMAN, Associate Justices.

PRETTYMAN, Associate Justice.

Appellant was indicted in December, 1944, for murder. Upon the trial he was represented by experienced counsel of his own choice and employment. He was found guilty of murder in the second degree and sentenced to imprisonment. A motion for a new trial was made and denied. No appeal was taken, and the time within which appeal might have been taken expired. Thereafter, by other counsel, he filed his petition for a writ of habeas corpus. The District Court denied the writ, and this appeal was taken from that order.

Appellant contends that the charge to ·the jury by the trial court was so inadequate and prejudicial as to deny him due process of law, and that by such denial the court lost jurisdiction to enter judgment. The contention must be examined in the light of the facts shown by the record.

Appellant shot and killed one Russell. A few hours prior to the shooting, appellant's wife and Russell had a dispute over a debt, and the wife testified that Russell then threatened to kill appellant and that she communicated that threat to appellant. The shooting occurred in a house on Neal Place, not the residence of appellant or the deceased but apparently a meeting place for residents in the neighborhood. The testimony for the Government was that appellant came into this house with a shotgun. Facing the front door, he sat down in a chair in the kitchen with the gun across his lap. A few minutes later Russell entered the front door. Appellant exclaimed, "Oh, no, you won't. You are not going to get me."; or "I am going to get you before you get me." He then shot Russell. The testimony for the defense was that Russell was a man of bad reputation; that he had assaulted several people in the neighborhood; that he had threatened appellant that morning; that appellant and

some of his friends had planned to go hunting in a few days, and that one friend had told appellant to bring his shotgun to the shop to be oiled. Appellant testified that while he was en route from his own home to the shop with the gun, he met Russell face to face in front of the house on Neal Place and turned into the house to avoid him; that in a few minutes Russell entered the house, drew a pistol from his pocket and made a motion as if to shoot appellant; that appellant threw up his arms, "and the gun went off." Appellant also presented testimony to show his own good reputation. Although there were two witnesses to the shooting, and several others arrived on the scene immediately thereafter, no pistol was seen by any witness either before or after the shooting.

Thus, the sole defense was self-defense, and counsel for appellant so told the court and the jury. Some discussion took place between the court and counsel, in the absence of the jury, as to whether, upon the evidence, the court should instruct on manslaughter. Two opinions of this court were discussed.[1] Upon request by appellant's counsel, the court told the jury that if they believed the accused was guilty, but not of first-degree or second-degree murder, they might return a verdict of manslaughter.

After delivering its instructions, the court inquired whether counsel had any further request. Counsel for appellant suggested a further statement on manslaughter, and the court offered to instruct by definition, which would necessarily include reference to heat of passion. Counsel for appellant said, "No. You are right, your Honor.", and the court commented, "If I told them that, it might ruin your chances somewhat." Counsel for appellant then asked for further instruction on the burden of proof, and the court repeated the instruction on reasonable doubt. No further request was made by counsel, and no exception to the charge was taken.

The question before us is whether, in that setting of facts, the charge to the jury was so inadequate as to constitute a denial of due process of law.

The charge to the jury was short and omitted many refinements in definition and instruction which are customary in the federal courts in capital cases. Mere errors in the charge, however, do not constitute sufficient basis for grant of habeas corpus. The inadequacy prerequisite to that writ must consist of the omission of essentials to such an extent that the accused is denied a fair trial in the Constitutional sense. It is in that light that we must examine the charge.

The court instructed the jury that before they could convict, they must find the accused guilty beyond a reasonable doubt; that until a case is finally submitted to the jury, the presumption is that the accused is innocent; that evidence of good reputation may be sufficient to create a reasonable doubt. The court instructed that if the jury believed beyond a reasonable doubt that the accused got his gun and lay in wait to kill the deceased, and did kill him, they would be justified in bringing a verdict of murder in the first degree; that if the intention to kill was an instantaneous thing, not deliberate, they would be justified in a verdict of murder in the second degree or of manslaughter; that if they believed that the accused had reasonable grounds to fear, and actually did fear, for his life or that grievous bodily harm would be inflicted upon him, that if they believed the deceased either had a gun when he came into the house or that the accused was so frightened that he thought the deceased had a gun, they would be justified in finding the defendant not guilty; because, said the court, "a man has a right to protect himself from death and grievous bodily harm." The court read to the jury the pertinent part of the statutory definition of murder in the first degree and gave them a definition of malice. As to manslaughter, the court told the jury that there is no statutory definition in this jurisdiction, the District of Columbia being left to the common-law definition, and that if they thought the accused was guilty, but not guilty of murder in the first degree or in the second degree, they could return a verdict of manslaughter. The court concluded by repeating the instruction on self-defense. Then occurred the colloquy at the bench to which we have referred, and the repetition of the instruction on reasonable doubt.

Although the court told the jury that in order to convict they must be persuaded of guilt beyond a reasonable doubt (the ex-

---

[1] Horton v. United States, 1899, 15 App.D.C. 310; Kinard v. United States, 1938, 68 App.D.C. 250, 96 F.2d 522.

pression occurs four times in the short charge), the court did not define "reasonable doubt" but, on the contrary, said:

"I am not going to go into the question of reasonable doubt and presumption of innocence because all that has been explained to you several times by the Court and has been explained to you today by counsel."

The reference to prior explanation by the court was to other cases "which you [the jury] had in this court during the present month."

Appellant says that the court failed to define clearly murder in the first degree, murder in the second degree, and manslaughter, and to explain any of the elements of those offenses; that the court failed to tell the jury the function or purpose of the indictment; and that the court made statements prejudicial to appellant.

■ It is established that habeas corpus cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357; Bostic v. Rives, 1939, 71 App.D.C. 2, 107 F.2d 649. It is also established that the writ may be used in those exceptional cases where the conviction has been in disregard of the Constitutional rights of the accused and where the writ is the only effective means of preserving the rights of the accused; as where the facts relied on are dehors the record and their effect on the judgment is not open to consideration and review on appeal. Waley v. Johnston, 1942, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302. It is an established rule that compliance with Constitutional mandates is an essential jurisdictional prerequisite to the authority of a federal court to enter judgment, and jurisdiction initially had may be lost by failure to observe such a mandate. Johnson v. Zerbst, supra; Jones v. Huff, 1945, 80 U.S.App.D.C. ——, 152 F.2d 14. It is reversible error for the trial court to fail to define the various crimes involved in the indictment, and to fail to define the elements of each, to the extent necessary to permit the jury to apply the law to the facts. Williams v. United States, 1942, 76 U.S.App.D.C. 299, 131 F.2d 21; Miller v. United States, 10 Cir., 1941, 120 F.2d 968. Counsel for appellant quite skillfully cast their case at the point of convergence of these several rules.

■ The requisites of a proper charge to the jury are set out in our opinion in Williams v. United States, supra. But the question presented upon petition for habeas corpus is not whether the charge was erroneous in its inadequacy; the question is whether the inadequacy amounted to denial of due process and therefore ousted the court of jurisdiction to enter judgment, and also whether the errors were open to review upon appeal.

The charge in the case at bar was, of course, in open court and was stenographically reported. Its inadequacy was subject to exception and to appeal. No request for further instruction was made, and the attitude of the court, as reflected in the entire record, was such as to indicate that if a reasonable request had been made, further instruction would have been given. No exception to the charge was taken, and no appeal was noted. The written transcript does not recreate fully the atmosphere of the court room in which tactical decisions must be made by counsel, but the facts in this record, as indicated by our summarized statement of them, are such as to show that there was no prejudice on the part of the court and no inadvertence on the part of counsel. The sole hope of the defense was a plea of self-defense asserted by the accused but not supported in vital respects by tangible evidence or by testimony of persons present. The court instructed clearly and strongly on self-defense. The Government urged a verdict of first-degree murder. A successful appeal from judgment on the verdict of second-degree murder would have confronted the accused again with the peril of the Government's case.

■ It is clear that the court impressed upon the jury that before they could return any verdict of guilty, they must be persuaded beyond a reasonable doubt. The question is whether the failure of the court to define "reasonable doubt" in this particular case, and its reliance upon the knowledge which it knew the jury had upon the subject, denied the accused due process of law. Counsel for appellant say that we cannot now tell whether the jurors had such knowledge. That is true, but we must assume that the statement of the court was correct; and we again note that we are not called upon to decide whether we would have affirmed or reversed if an appeal had been taken. It is the duty of the

trial court to be meticulous in its treatment of every case which comes before it, and to withstand the temptation to avoid the tedium of repeating to jurors that which the court knows they know. The omission may create an erroneous impression. Nevertheless, we do not think that the failure of definition, under the circumstances of this case, was a denial of due process which ousted the court of jurisdiction to enter judgment.

While the definitions of first-degree and second-degree murder given in the charge were not elaborate, they contained the essential elements and a valid distinction between the two offenses. The failure to define manslaughter was due to a decision reached by the court and counsel for the defense. The court felt that the facts did not justify an instruction on manslaughter but, at the request of counsel and after a joint examination of Kinard v. United States, 1938, 68 App.D.C. 250, 96 F.2d 522, proceeded, as we have stated, to instruct on the subject without defining the offense. The sum of the matter was that the door was left open for the jury to return the lesser verdict, and the chance was not obstructed by confining it to a finding of heat of passion. The action taken was not prejudicial to the accused under the circumstances. Even upon appeal, failure to instruct—in the absence of a request therefor—is not reversible error unless the subject of the instruction is essential in the case. Kinard v. United States, supra, and cases there cited. Whether erroneous or not, the omission in the present case was certainly not, under the circumstances, a denial of due process.

■ We find nothing fatally prejudicial in the opening remarks of the court or in its reference to the accused as "the prisoner".

We are not to be understood by this opinion as approving the charge given in this case as a proper charge in a capital case in this jurisdiction. We merely say that after a careful examination of the entire record, we are of opinion that under the circumstances the charge is not open to successful collateral attack by habeas corpus proceeding, its inadequacy not being such as to constitute denial of due process of law.

Affirmed.