**UNITED STATES v. JONIKAS.**
**No. 10570.**

United States Court of Appeals
Seventh Circuit.

July 3, 1952.

Maurice J. Walsh, Chicago, Ill., for appellant.

Otto Kerner, Jr., U. S. Atty., Anna R. Lavin and John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

A jury in the District Court found the defendant, Stanley A. Jonikas, guilty of possessing and passing four counterfeit bills in violation of 18 U.S.C.A. § 472. The defendant was sentenced by the court to 15 years imprisonment.

The defendant appealed to this court, contending that there was not sufficient evi-

dence to sustain the finding that the bills were counterfeit, nor to sustain the finding that the defendant knew that they were counterfeit. On February 21, 1951, this court affirmed the judgment of the District Court, holding that there was sufficient evidence to sustain the verdict. 7 Cir., 187 F. 2d 240.

Thereafter, on a motion to modify the sentence, the District Court reduced the defendant's sentence to 7½ years but denied two motions for a new trial which alleged newly discovered evidence.

On June 29, 1951, the defendant filed a motion in the District Court under 28 U.S. C.A. § 2255 to vacate and set aside the sentence and to release the defendant. This motion alleged that the sentence was imposed on the defendant in violation of the constitution and laws of the United States, in that the trial court's instructions "were so erroneous and prejudicial and so insufficient as to fail to safeguard the rights of the Defendant, and did so greatly prejudice the Defendant that he did not secure a fair and impartial trial by a jury in accordance with the Constitution and Laws of the United States."

In this motion the defendant admitted that the evidence of the Government tended to show that the defendant had passed one of the said counterfeit bills in each of four liquor establishments and that the police apprehended him at the fourth tavern while he was in the act of passing one of the counterfeit bills. The motion stated further that the defendant "although he admitted that he may have passed the bills in question (the four counterfeit bills), he did not know whether he had, and he further stated that he did not know whether they were counterfeit." The motion also admitted that the defendant, after his arrest, went around to the taverns and repaid the persons to whom he had passed the counterfeit bills.

■ The purpose of the proceeding provided for by 28 U.S.C.A. § 2255 is to give the prisoner a method for a direct attack on his sentence in the court in which he was tried and sentenced; but to attack the sentence successfully in such a proceeding the prisoner must have grounds which would support a collateral attack on the sentence. Mere errors of law occurring in the trial which could be corrected by an appeal, cannot serve as grounds for an attack on the sentence under § 2255.

In Pullian v. United States, 10 Cir., 178 F.2d 777, a prisoner tried to vacate his sentence on the ground that the indictment had been deficient. There the court said, 178 F.2d at page 778:

"Section 2255, supra, does not give a prisoner the right to obtain a review, first by the court which imposed the sentence and then on appeal from a denial of a motion to vacate, of errors of fact or law that must be raised by timely appeal. * * * While the nature of the attack is direct, the grounds therefor are limited to matters that may be raised by collateral attack. It is only where the judgment was rendered without jurisdiction, the sentence imposed was not authorized by law, or there was such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack that a motion to vacate will lie under such section."

In Taylor v. United States, 4 Cir., 177 F.2d 194, 195 the court said:

"Prisoners adjudged guilty of crime should understand that 28 U.S.C.A. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty. Questions as to the sufficiency of the evidence or involving errors either of law or of fact must be raised by timely appeal from the sentence if the petitioner desires to raise them. Only where the sentence is void or otherwise subject to collateral attack may the attack be made by motion under 28 U.S.C.A. § 2255, which was enacted to take the place of habeas corpus in such cases and was intended to confer no broader right of attack than might have been made in its absence by habeas corpus."

In Hastings v. United States, 9 Cir., 184 F.2d 939, the court denied such a motion which alleged insufficiency of evidence and the giving of an erroneous instruction.

The court there affirmed the decision of the trial court denying the motion, saying, 184 F.2d at page 940:

"There was no appeal from the judgment of conviction and what appellants seek in this § 2255 proceeding is a retrial of their case."

See also Hallowell v. Hunter, 10 Cir., 186 F.2d 873, 874; Parker v. United States, 4 Cir., 184 F.2d 488, 490; Barrett v. Hunter, 10 Cir., 180 F.2d 510, 513, 20 A.L.R.2d 965; Howell v. United States, 4 Cir., 172 F.2d 213; Kenion v. Gill, 81 U.S.App.D.C. 96, 155 F.2d 176.

In the instant case the defendant was represented at the trial by counsel he had chosen. At the beginning of the trial the defendant's counsel asked the trial judge if he gave his own instructions and the trial judge replied:

"If you don't ask for some, you are not likely to get it. I will not take the burden of preparing all the instructions."

The court at that time told the defendant's attorney that he had and gave the usual stock instructions that apply to all criminal cases, but that if the attorney wanted anything special he should prepare it and submit it. At the beginning of the last day of the trial the court again asked the attorney for the defendant if he had any special requests for instructions and was told that the defendant's attorney had just one. It is not shown that the one instruction which the attorney wanted was prepared and submitted to the court.

The court, in instructing the jury, told them that the defendant was charged with possessing and passing counterfeit money, knowing it to be counterfeit; that it was necessary before the jury could find the defendant guilty that they find as a preliminary thereto that the defendant knew the money to be counterfeit; and that if he had the counterfeit money innocently and did not know that it was counterfeit, then the jury should find him not guilty. The court told the jury that he did not think there was "any great amount of question in the evidence" that the defendant "did pass these bills at the places indicated," so that "it narrows itself down pretty much in this case to the question of whether or not he knew these bills to be counterfeit." The court told the jury further that:

"That they are counterfeit has been admitted and has been proved. I do not think there is any doubt about that in the evidence. They are before you and they have been identified. They all bear the same serial number, which is impossible in anything but counterfeit money. You can see that for yourself. No two bills that are genuine carry the same serial number. These four bills all do carry the same serial number. So you do not have to spend a great deal of time on that * * *.

"It narrows itself down to a question of whether or not this man knew this money was counterfeit. In that connection you must consider all of the evidence, not just part of it—but all of it."

In explaining to the jury the manner in which they should consider the evidence given by the defendant, the court said:

"The defendant in this case is a competent witness in his own behalf, and you have no right to disregard his testimony merely because he is a defendant. You must treat his evidence the same as you would that of any other witness. You saw him on the witness stand and observed his demeanor, and you have heard his story. In so far as he is corroborated by other witnesses that is to his advantage. If he is not corroborated, that is for you to consider as to whether or not he spoke the truth. You have a right to consider his interest in the outcome of this case. You have a right to consider his frankness or lack of frankness, whichever you consider, on the witness stand. But you must treat him the same as any other witness, adjudge his testimony as to truth or falsity the same as you would the testimony of any other witness. Consider the knowledge of the truth, consider the testimony and consider the demeanor of the witness on the stand, just the same as any other witness."

The court also defined and explained circumstantial evidence and explained that it was proper for the jury to consider such evidence.

On the question of "reasonable doubt" the court told the jury:

"The law requires that no defendant in any criminal case be convicted unless the evidence has proved his guilt beyond a reasonable doubt. The courts have many times tried to define a reasonable doubt, but most courts agree that it is a mistake to try and define 'reasonable doubt.' The term defines itself. It is not an unreasonable doubt. It must be a doubt founded on reason. It does not mean you must hunt for doubts where none exists. It does not mean you shall find doubts where none exists. Probably the best definitions are those which say that you are convinced beyond a reasonable doubt if you would receive it without hesitation in some grave affair of your own personal life or business. You are not supposed to go out and hunt for doubts. Your oath does not require that.

"If the evidence satisfies you to a moral certainty that the defendant is guilty then your conscience should not bother you any about finding him guilty. If you have a grave and serious doubt, or some doubt that arises from reason or lack of evidence, or evidence, then you should vote not guilty.

"Give the man a fair trial. In all events exercise your best intelligence in arriving at a fair verdict."

The trial court then asked counsel for the Government and for the defendant if there was anything else they wanted covered. The attorneys for the defendant and the Government both answered, "No." The court then asked them: "Are you both satisfied with the instructions I have given the jury?" and the attorney for the defendant then said: "On the matter of mere possession of the money." The court then told the jury:

"If I haven't made it clear, I should make it clear that mere possession of this money without knowledge of its counterfeit nature would not be an offense. It must be accompanied with knowledge of the fact that it is counterfeit. In that connection you have a right to consider where the money came from, all the facts and circumstances surrounding it, how it is supposed to have gotten into his possession, the truth or untruth of his story about the crap game in the alley—anything else that you want to consider. You are to arrive at the truth. That is what you are here for. Having arrived at it, act fearlessly and without any feeling of remorse, or anything else."

After the court had so supplemented its instructions to the jury, the attorney for the defendant then indicated that that was all he wanted. The record in this case fails to show that the defendant's attorney made any further objection during the trial to any portion of the instructions to the jury under, or pursuant to, Rule 30 of Federal Rules of Criminal Procedure, 18 U.S.C.A.

In his appellant's brief counsel for the defendant acknowledges that " 'ordinary' procedural defects, not raised in the trial court or in the Court of Appeals, do not open a judgment to collateral attack in a motion such as the one at bar," but he contends that in this case the instructions deprived the defendant of his constitutional right to trial by jury.

Counsel for the defendant first contends that failure of the trial court to instruct as to the presumption of the defendant's innocence was a fatal defect. To support this contention he cites two cases: Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481; and Cochran v. United States, 157 U.S. 286, 15 S.Ct. 628, 39 L.Ed. 704. These two cases were direct appeals and held only that giving an instruction on reasonable doubt did not relieve the trial court from the duty to give an instruction on presumption of innocence *where such an instruction was requested.* This falls far short of defendant's contention that failure to give an instruction on presumption of innocence, even though not requested, robs the trial court of jurisdiction to enter a judgment and thereby makes such a judgment subject to collateral at-

tack in habeas corpus or by a motion under § 2255.

On this contention the defendant also cites United States v. Raub, 7 Cir., 177 F. 2d 312, and United States v. Balodimas, 7 Cir., 177 F.2d 485, two decisions by this court, as supporting his contention that "despite failure to call attention of the trial court to errors in instructions, the reviewing court is obligated to notice such errors on the court's motion." Both of these decisions were on appeals to this court. In neither of those decisions did we hold, nor intimate, that such an error would deprive the trial court of jurisdiction to render judgment and sentence a defendant, and thus make the judgment subject to collateral attack by habeas corpus or by a motion under § 2255.

■ The defendant also objects to the trial court's failure to instruct the jury that the defendant was on trial on eight separate counts and that his guilt or innocence was to be determined as to each count and that the trial court failed to define or describe the charges. The indictment contained one count as to the possession and one count as to the passing as to each of the four counterfeit bills. The court told the jury that the defendant was "charged with possessing and passing counterfeit money knowing it to be counterfeit." The jury found the defendant guilty as charged in the indictment. The jury had heard the evidence and knew that the defendant had passed the four counterfeit bills. Failure to describe more specifically the separate counts of the indictment did not deprive the defendant of any constitutional right nor deprive the court of jurisdiction to render the judgment.

■ The defendant also objects to the trial court's definition of reasonable doubt and says that "actually the Court gave no definition for reasonable doubt." In Kenion v. Gill, 81 U.S.App.D.C. 96, 155 F.2d 176, the charge to the jury was questioned in a petition for habeas corpus. There the trial court had instructed the jury that to convict they must find the accused guilty beyond a reasonable doubt, but failed to define reasonable doubt. The court there pointed out, 155 F.2d at page 179, that such

an "inadequacy (in the charge) was subject to exception and to appeal", but held that it did not amount to a denial of due process such as to oust the court of jurisdiction to enter the judgment.

The defendant strenuously objects to the statements of the trial judge that the fact that the four bills were counterfeit had "been admitted and proved." In connection with that statement the court called the jury's attention to the fact that all four of the bills bore the same serial number which was impossible in anything but counterfeit bills. The bills were introduced in evidence and were before the jury. There was, of course, no denial, nor any attempt to deny, that the bills were counterfeit. In addition to the fact that the bills bore the same serial number, the jury heard the undisputed testimony of Government witnesses that the bills were counterfeit. The defendant further objects to the statement in the charge that the trial judge did not think there was "any great amount of question in the evidence that he (the defendant) did pass these bills at the places indicated."

■ It is not even reversible error for the court in its instructions to assume the existence of facts, the existence of which is undisputed or proved beyond controversy. 3 Am.Jur., Appeal and Error, § 1106.

Each of the four tavern keepers identified the defendant as the person who had come into his tavern on the night in question, had ordered a drink or two, and had paid with a $20 bill. Each of the first three of these witnesses also testified that the $20 bill received from Jonikas was the only bill of that denomination in his cash till, and that he (the witness) had signed or initialed the bill for later identification. Each of the four witnesses identified one of the counterfeit bills as being the one he had received from the defendant. Two of the witnesses testified that shortly after the defendant left the tavern he returned with the police and was identified by the witness as the man who had given the witness the counterfeit bill. The witnesses said that this was in the presence of the defendant and that he made no denial of the accusation. It was also shown that Jonikas repaid the three tavern keepers who had

given him change for the bills. In the fourth tavern the change from the bill was still on the bar and was taken back by the owner of the tavern when he was told that the bill was counterfeit.

As we pointed out above, the motion filed by the defendant herein admitted that he had testified at the trial that "although he admitted that he may have passed the bills in question, he did not know whether he had." We think the defendant's own testimony went further than that. In his testimony the defendant said that on the night in question he went to the vicinity of 120th and Halsted Streets (where the four taverns in question were located) and stopped in several taverns, including the four in which the counterfeit bills were passed. He said that in the last tavern he visited he told the police:

> "If I did happen to pass any counterfeit money in there I would pay it all back and I would make good because I didn't know in fact I had this counterfeit money on me."

Jonikas admitted that he later went back to the first three taverns visited and repaid the tavern keepers. The defendant answered, "Yes," to the question:

> "You said he took you to the places where you paid back the money; you referred to the places you had been earlier that evening where you had passed a twenty?"

The defendant also testified that he got these $20 bills (the counterfeit bills initialed by him and by the tavern keepers) in a crap game in which he was playing the preceding day.

When we consider all of the admissions in the defendant's testimony, the positive testimony of the tavern operators and the Government witnesses, the defendant's subsequent statement that he may have passed the bills but that he didn't know, does not amount to his disputing or denying that he passed the bills. We think the trial judge, in stating that he did not think there was any great amount of question in the evidence that the defendant did pass the bills at the places indicated, was at most assuming the existence of facts which were undisputed and which were proved beyond controversy. In assuming the existence of such facts the court was certainly not denying the defendant a trial by jury.

In this case, while we do not want to be understood as putting our stamp of approval on the charge given to the jury by the trial judge, we are of the opinion, after consideration of the entire record, including consideration of the charge as a whole, that the judgment is not open to collateral attack under § 2255.

The judgment of the trial court is, therefore, affirmed.