**PELLEY v. UNITED STATES.**
**No. 11054.**

United States Court of Appeals,
Seventh Circuit.
June 23, 1954.

Rehearing Denied Aug. 20, 1954.

Schnackenberg, Circuit Judge, dissented.

598

George A. Henry, Indianapolis. Ind., Albert W. Dilling, Chicago, Ill., Kirkpatrick W. Dilling, Chicago, Ill., for movant-appellant.

Jack C. Brown, U. S. Atty., Indianapolis, Ind., Stephen Leonard, William H. Sparrenberger, Robert J. Wilson, Asst. U. S. Attys., Indianapolis, Ind., for respondent-appellee.

Before LINDLEY, SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This appeal is from a judgment dismissing, without a hearing, a motion filed by William Dudley Pelley under Title 28 U.S.C.A. § 2255, to vacate, set aside and correct a sentence imposed upon Pelley upon his conviction, on August 16, 1942, of violating the Federal Sedition Law, the amended version of which statute is 18 U.S.C.A. § 2388.

The plaintiff here appealed his conviction and the judgment was affirmed by this court, United States v. Pelley, 7 Cir., 132 F.2d 170, a petition for certiorari was denied by the Supreme Court, 318 U.S. 764, 63 S.Ct. 665, 87 L.Ed. 1135, and a petition for rehearing was also denied by that court, 318 U.S. 801, 63 S.Ct. 829, 87 L.Ed. 1165.

 The appeal from the original criminal action finally disposed of all questions which were presented on the appeal and all other questions which might have been presented and which did not involve such errors as would furnish grounds for a collateral attack on the judgment in the criminal case. In United States v. Jonikas, 7 Cir., 197 F.2d 675, 676, this court said: "The purpose of the proceeding provided for by 28 U.S.C.A. § 2255 is to give the prisoner a method for a direct attack on his sentence in the court in which he was tried and sentenced; · but to attack the sentence successfully in such a proceeding the prisoner must have grounds which would support a collateral attack on the sentence. Mere errors of law occurring in the trial which could be corrected by an appeal, cannot serve as grounds for an attack on the sentence under § 2255." This section expressly provides that it may be used only to attack a sentence which "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack * * *." (Our emphasis.) As said in Taylor v. United States, 4 Cir., 177 F.2d 194, 195: "Prisoners adjudged guilty of crime should understand that 28 U.S.C.A. § 2255 does not give them the right to try over again the cases in which they have been adjudged guilty. * * * Only where the sentence is void or otherwise subject to collateral attack may the attack be made by motion under 28 U.S.C.A. § 2255 * * *."

In the appeal from the original conviction and sentence the defendant Pelley questioned the sufficiency of the indictment, and the action of the trial court: (1) in overruling the motion for a bill of particulars, (2) in the admission of certain evidence, and (3) in the overruling of the motion for a new trial. The motion for a new trial also alleged error in submitting counts two and three of the indictment to the jury after having withdrawn portions thereof from consideration by the jury, and, finally, the sufficiency of the evidence to support the verdict.

On October 15, 1946, more than four years after his conviction, Pelley filed

in the trial court a motion in the nature of a writ of *coram nobis* alleging that in his criminal trial counsel for the Government made inflammatory and prejudicial statements in their arguments to the jury and also alleging "matters" not brought to the attention of the court or ruled upon by the court or decided by the court or the jury. After this motion was filed in the District Court Pelley filed a motion in the United States Court of Appeals for leave to file the motion. The motion for leave to file was denied by the Court of Appeals and the motion was thereupon dismissed by the District Court.

On April 9, 1948, almost six years after his conviction, Pelley filed a petition for a writ of habeas corpus against the Warden of the Federal Penitentiary at Terre Haute, Indiana. This petition was heard by the Honorable Walter C. Lindley acting as United States District Judge in the Southern District of Indiana. As a basis for the petition Pelley charged: (1) that women had been improperly excluded from the grand jury and the petit jury, (2) that the indictment charged no offense, (3) insufficiency of the evidence, (4) errors in the instructions to the jury, (5) improper examination of the witnesses by the trial judge, and (6) inflammatory and prejudicial arguments to the jury by counsel for the Government. The petition for writ of habeas corpus was dismissed by Judge Lindley on the ground that all contentions made in the petition were, or could have been, reviewed on the original appeal.

Finally, on July 5, 1952, approximately ten years after his conviction, the appellant filed, under 28 U.S.C.A. § 2255, the present motion to vacate, set aside and correct his sentence.

■ It is true that all facts well pleaded in the appellant's motion must be accepted as true as against the motion of the Government to dismiss except, of course, the trial judge is not compelled to accept as true statements in the motion which are contradicted by the files and records of the court. United States v. Strum, 7 Cir., 180 F.2d 413, 414.

■ In the present motion Pelley first complains of the preliminary steps leading to his arrest and particularly to the "highhanded manner" in which he was arrested. He also alleges that the warrant for his apprehension was issued in derogation of his rights to freedom of speech and freedom of the press which are guaranteed to him by the Constitution of the United States. Pelley was apprehended in Connecticut and he claims that he was removed from that jurisdiction and returned to Indiana without a hearing before a United States Commissioner, but on the promise that he would be accorded a preliminary hearing before a United States Commissioner in Indianapolis. On June 9, 1942, an indictment was returned against Pelley and he says that he then retained Oscar F. Smith, an attorney of Indianapolis, Indiana, to represent him as chief defense counsel, and Floyd G. Christian, an attorney of Noblesville, Indiana, to assist Mr. Smith. Pelley's motion alleges that all preliminary defense motions attacking the indictment were promptly brushed aside and overruled by the late Honorable Robert C. Baltzell, the judge then presiding, and the cause was set for trial on July 28, 1942. On the appeal from Pelley's conviction this court held that the indictment was sufficient, thereby finally adjudicating that question.

The next three pages of Pelley's motion are devoted to an attack upon the admissibility, the weight and the sufficiency of the evidence against him. This court on the original appeal also passed on the questions raised as to the admissibility of the evidence and decided that the evidence was sufficient to sustain the verdict of the jury. The motion also presents again the argument that Pelley was acting within his Constitutional rights in making and publishing the statements for which he was indicted and the offense of which he was convicted. This contention was fully considered,

discussed and decided against him in the original appeal.

Pelley's present motion alleges and discusses at length various acts and statements of the trial judge which the movant contends show that the trial judge "was so biased and prejudiced against movant that he could not possibly accord to movant the fair and impartial trial guaranteed to him by the Constitution and laws of the United States, and he should have disqualified himself voluntarily * * *." However, the record before us fails to show that any affidavit of bias and prejudice was filed against the trial judge in the original criminal proceeding, and the assignment of errors in that case made no mention of any prejudice on the part of the trial judge. The assignment of errors filed immediately after the trial by its silence on the subject of the prejudice of the trial judge casts very real doubt on the present assertions of prejudice ten years after the criminal trial and several years after the death of the trial judge. The illustrations of the alleged actions of the trial judge showing his prejudice are so insignificant and trivial that they scarcely call for comment. First the motion states on this subject that Judge Baltzell arbitrarily caused the selection of a jury "in record time," with a result that the jury as selected had on it a man in his seventies and several men in their sixties. There is no allegation that the men on the jury were not competent or that their ages had anything to do with the conviction of Pelley. The motion points out, in an attempt to show prejudice, that the trial judge overruled a larger percentage of the objections made by the defense than of the objections made by the prosecution. Any objection in the trial on which the trial judge committed error in his ruling could have been presented on the appeal and, therefore, this offers no ground for a collateral attack on Pelley's conviction and sentence. The motion also states that the trial judge many times interrupted the proceedings "to take part in questioning witnesses, and * * * when he did so, it was with the obvious purpose and effect of aiding the prosecution * * *." Pelley's motion insists that in determining whether the movant had a fair trial the court should examine the entire record in the criminal case without regard to whether proper objections were made or not and without regard to the trial court's ruling upon such motions as were made. But, as we have pointed out above, all such questions with regard to admissions and exclusions of evidence and as to actions by the trial judge should have been saved by proper objections during the trial and could have been presented to this court on the original appeal. Such questions present no grounds for a collateral attack on the judgment in the criminal case. The questions with regard to the selection of the jury, the "protracted examination of witnesses by the trial judge" to the prejudice of the defendant, and the allegations as to the inflammatory and prejudicial arguments made to the jury by the attorneys for the prosecution were all presented in the petition for a writ of habeas corpus which Pelley filed on April 9, 1948. But, as pointed out above, Judge Lindley held that all those questions were or could have been presented on the original appeal.

■■ Finally, Pelley contends in this present motion that he was "denied the substance of a fair trial, in contravention and violation of the laws and Constitution of the United States" because the "legal representation afforded to movant by his chief counsel, the late Oscar F. Smith, was in effect no legal representation and was not such benefit of counsel in a criminal proceeding as is guaranteed to all defendants by the Constitution and laws of the United States"; that this was true "because the said Smith had entered into a conspiracy with the prosecution in said cause to deprive movant of a fair trial and aid in movant's conviction upon the unwarranted charges in the indictment

in said criminal cause." The motion then proceeds to allege that Smith "was approached by an emissary of the prosecution shortly after his retention by movant as chief defense counsel, and warned that if he did not 'pull his punches,' and aid in 'putting Pelley away,' his wife, a German alien, would be deported"; and that this incident was acknowledged to movant by Smith "at a much later date, after the damage to movant and his defense had been completely perpetrated." The motion does not allege that Attorney Christian knew of the alleged threat to Smith or was aware of any effect of this threat on Smith's conduct during the trial. But the motion does allege the conclusion that the record of the trial shows that Pelley did not get "any defense." The motion also alleged that a "further reason for Smith's failure to accord movant an adequate defense in said cause is to be found in the fact that Smith had formerly been an employee of the Federal Bureau of Investigation, which undoubtedly affected his handling of F. B. I. witnesses and his entire defense attitude in a criminal proceeding in which the Government was a party. The motion then states that "some of the acts and omissions of defense counsel supporting movant's contention that his right to a fair trial and an adequate defense was violated" are as follows: (1) Failure to insist that the proceedings concerning the selection of the jury and the preliminary statement by the trial judge to the jury be made a matter of record. (2) Failure to move for exclusion of the witnesses during the trial. (3) Failure in the cross-examination of one Government witness to bring out the witness' Communistic background. (4) Failure to move for a directed verdict. (5) Offer to close the defendants' case without hearing certain witnesses in order to avoid a brief continuance of the trial. (6) Failure to ask for a mistrial at the conclusion of the questioning by the trial judge of the movant concerning the possibility of movant's having given a newspaper reporter an interview concerning the conduct of the trial. (7) Failure to object to the "highly inflammatory, prejudicial closing remarks to the jury" by the Government counsel and failure to move for a mistrial because of these remarks. (8) Failure to take exception to certain of the court's instructions to the jury. (9) Failure to read from movant's writings to counteract the effect of certain statements which the prosecution lifted out of context and used as the principal basis for movant's conviction. (10) Failure to make the closing statements to the jury a matter of record. (11) Inadequate preparation for the trial. (12) Failure to object to the introduction of certain evidence concerning the attack on Pearl Harbor. (13) Agreeing to a stipulation that certain portions of the indictment relating to movant's statements might be dismissed. (14) Failure to properly abstract the record for the appeal from movant's conviction. (15) Failure to insist that the official trial transcript and the complete exhibits, rather than excerpts from movant's writings, be made available to the United States Court of Appeals. (16) Failure to object to the jury's taking the indictment into the jury room without the dismissed portions of the indictment having been deleted. (17) Amendment of movant's brief in the original appeal at the insistence of one of the attorneys for the Government by deleting matter that might conceivably have caused the Court of Appeals to render a verdict adverse to the prosecution. The movant concludes this recital of the derelictions of duty on the part of his attorneys by saying that they were "so gross and deliberate that it made the trial accorded movant a farce and mockery of justice, fully warranting, in and of itself, the vacating and setting aside of movant's illegal conviction and sentence in said cause."

If we accept as true all of the factual allegations of Pelley's motion concerning the derelictions of duty by Attorney Smith, the movant still does not make

out a case which would warrant setting aside his conviction and sentence by a collateral attack under Section 2255. When the motion is stripped down to the allegation of facts we find that the motion reveals that Pelley hired two attorneys, Smith and Christian, to represent him. Both were reputable and experienced attorneys. The motion states that Smith was hired as chief defense counsel but the record shows that Christian, if he did not actually play the leading role between the two defense attorneys, did play an equally important role with Smith. Christian made the opening statement to the jury for Pelley. Both attorneys participated in the examination and cross-examination of the witnesses but the direct examination of the defendant Pelley, the most important witness for the defense, was conducted by Mr. Christian.

Possibly some of the acts or omissions of the defense attorneys now cited by Pelley were wrong. It is doubtful whether any attorney ever tried a case lasting as long as this one did and resulting in an adverse verdict without being able, on reviewing the trial in his own mind, to see what he then considered to be mistakes. As said in Moss v. Hunter, 10 Cir., 167 F.2d 683, 684: "But, one who appears before the court with counsel employed for his defense is not deprived of his constitutional right to the assistance of counsel merely because in retrospection he concludes that such representation did not meet his standards of effectiveness. (Citing authorities.)"

In the instant case we have only the factual allegation that one of the two defense attorneys was threatened with the deportation of his wife and also the alleged suspicion by the defendant Pelley that since that attorney had formerly worked for the F. B. I. he could not properly represent a defendant in a prosecution by the Government. But if it were true that Attorney Smith was intimidated by the alleged threat, the other attorney, Christian, was perfectly capable of presenting the case for the defendant. If we give full weight to all facts alleged here by Pelley, as distinguished from his conclusions, the picture presented is a far cry from that of a defendant without the legal representation that the Sixth Amendment to the Constitution guarantees.

We find in the instant case many similarities to the case of U. S. ex rel. Feeley v. Ragen, 7 Cir., 166 F.2d 976. There, as here, the defendant was represented by counsel of his own choice. There, as here, the defendant waited approximately ten years before filing a petition for a writ of habeas corpus in which he complained as to the competency of his counsel. There the judge and the attorney who conducted the defense were both dead when the petition for a writ of habeas corpus was filed. Here the trial judge and both of the defense attorneys involved are dead. In the Feeley case the court said, 166 F. 2d at page 981: "Petitions challenging the competency of counsel, especially years after the conviction, must clearly allege such a factual situation which if established by competent evidence would show the representation of counsel was such as to reduce the trial to a farce or a sham. Otherwise, they should be dismissed." But there, as here, " * * * the record does not begin to indicate that degree of incompetency of defense counsel in the conduct of a trial that amounted to no defense; that the trial was such a sham and a mockery that it amounted to a denial of due process in that the relator had in reality no counsel." Feeley case, 166 F.2d at page 980.

The judgment of the District Court dismissing the motion is affirmed.

SCHNACKENBERG, Circuit Judge: I am constrained to dissent.

Defendant's verified amended motion, filed July 5, 1952, to set aside his conviction of August 12, 1942, pursuant to section 2255, title 28 U.S.C.A., and rule 35 of the Federal Rules of Criminal

Procedure, 18 U.S.C.A., contains the following:

"24. Movant has been denied the substance of a fair trial, in contravention and violation of the laws and Constitution of the United States, for the following reasons:

"A. The legal representation afforded to movant by his chief counsel, the late Oscar F. Smith, was in effect no legal representation and was not such benefit of counsel in a criminal proceeding as is guaranteed to all defendants by the Constitution and laws of the United States, because the said Smith had entered into a conspiracy with the prosecution in said cause to deprive movant of a fair trial and aid in movant's conviction upon the unwarranted charges in the indictment in said criminal cause.

"B. The said Smith was approached by an emissary of the prosecution shortly after his retention by movant as chief defense counsel, and warned that if he did not 'pull his punches', and aid in 'putting Pelley away', his wife, a German alien, would be deported.

"C. That the incident hereinabove in Subparagraph 24B hereof referred to did transpire was acknowledged to movant by the said Smith at a much later date, after the damage to movant and his defense had been completely perpetrated.

"D. Movant does not know whether or not Floyd G. Christian, associate defense counsel, was aware of the threat made to Smith or was conscious of the effect it had upon Smith's conduct of the defense, * * * *".

The amended motion sets forth 19 "acts and omissions of defense counsel" (said to be only a part of them) "supporting movant's contention that his right to a fair trial and an adequate defense was violated".

This point was not presented in any of the prior unsuccessful attempts of defendant to set aside his conviction.

An allegation that his chief counsel had entered into a conspiracy with the prosecution to deprive him of a fair trial and to aid in his conviction is a statement of ultimate fact. It is issuable and traversable (71 C.J.S., Pleading, § 12, p. 33) in a criminal proceeding, where the applicable rules are the same as in civil pleadings, 42 C.J.S., Indictments and Informations, § 100, p. 983.

It is not necessary to lengthen this opinion by reciting the 19 items of alleged dereliction of defendant's chief counsel, as set forth in the motion. Without any such recital, it is clear that, if the facts in regard to the conspiracy can be proved by defendant on a hearing on his motion, he could not have received a fair trial. That the defendant makes no charge against his other counsel, Mr. Christian, is immaterial in passing upon the sufficiency of the motion. It might become a circumstance to be considered upon a hearing on the motion. The fact that attorney Smith is now deceased is also immaterial in testing the legal sufficiency of the motion. On a hearing on the motion, that fact would be a circumstance for consideration as to credibility.

If, unknown to a defendant on trial in a criminal case, his chief counsel has been coerced or intimidated by the prosecution, through threats of deportation of the counsel's wife, into entering into an agreement with a representative of the prosecution to withhold an effective defense, the presence in the case of an able, conscientious and honest associate counsel might not necessarily offset the damaging effects resulting from the consequent dereliction of the chief counsel. If one hires a team of horses to pull a loaded wagon, he is not getting proper service if only one of the horses is performing its proper function while the other is pulling back. If this charge in the motion can be proved true, defend-

ant did not receive a fair trial under the constitution. Not only should he be afforded an opportunity to prove this serious charge, but, as a matter of justice to the deceased counsel, this charge, now spread of record, should not be left standing. The stigma upon a dead man should be obliterated if defendant cannot prove it.

I believe that the judgment should be reversed and the matter remanded to the District Court for a hearing upon the motion, limited solely to the charge of conspiracy referred to in this opinion.