John Thomas **LOTT**, Johnnie Lee Reed, **Larry Pearce**, Joe Melvin Shaw and Doris Jeane Miller, Appellants,

v.

**UNITED STATES of America,** Appellee.

No. 15033.

United States Court of Appeals, Fifth Circuit.

Jan. 20, 1955.

676

John E. McLean, Fort Worth, Tex., for appellants.

Cavett S. Binion, Asst. U. S. Atty., Heard L. Floore, U. S. Atty., Fort Worth, Tex., for appellee.

Before HOLMES and TUTTLE, Circuit Judges, and ALLRED, District Judge.

ALLRED, District Judge.

Appellants were convicted by a jury upon the first count of an indictment charging them with conspiracy to violate the narcotic laws. Appellants Lott, Reed, Pearce and Miller, were also convicted on substantive counts charging violation of the narcotic laws.

■ Although appellant Doris Jeane Miller gave notice of appeal, no judgment of conviction or sentence appears in the record. Upon this being called to the attention of counsel after submission here, a stipulation has been filed reciting that Doris Jeane's appeal had been dismissed by the trial judge upon motion of her attorney. We find no authority in the Federal Rules of Criminal Procedure, 18 U.S.C.A., for such action. Rule 39(a) lodges supervision and control of proceedings in criminal cases in the appellate court from the time notice of appeal is filed with the clerk, except as otherwise provided. By clear implication, authority to dismiss is denied the trial court by the provision appearing in the second sentence of the rule: "The appellate court may at any time entertain a motion to dismiss the appeal * * *." [1] We treat the stipulation as a motion to dismiss here. The motion is granted.

Appellants' principal complaints here are: (1) that the conspiracy count fails to state an offense; (2) that the evidence is insufficient to support the verdict; (3) that the trial court erred in admitting certain evidence obtained without a search warrant, and in his remarks to the jury; and (4) alleged conflict of interest between appellants Reed, Pearce and Shaw, who were represented by the same court-appointed counsel.

■ The conspiracy count charged that appellants conspired to violate sections 2591(a), 2593(a), 2553(a) and 2554(a), of Title 26, by agreeing to unlawfully transfer and deliver marihuana, and sell, dispense and distribute various narcotics to Floyd Luke Watkins and appellants Reed, Pearce and Shaw, not in pursuance of written orders therefor. Seventeen overt acts were charged as having been done to effect the objects of the conspiracy. Appel-

[1]. Counsel and the trial court probably acted, erroneously, under Rule 73(a), Federal Rules of Civil Procedure, 28 U.S. C.A., providing in part: "If an appeal has not been docketed, the parties, with the approval of the district court, may dismiss the appeal by stipulation filed in that court, or that court may dismiss the appeal upon motion and notice by the appellant."

lants moved to "quash" the indictment on the ground that it merely charged them with conspiracy to sell, transfer, etc. marihuana and narcotics to, and among, themselves, thus amounting to no more than a buyer-seller relationship which, appellants say, is not sufficient to support a conviction for conspiracy.[2] This overlooks the fact that Watkins, one of those to whom it is alleged the marihuana and narcotics were to be sold, transferred, etc., is not named as a defendant or co-conspirator; and that the indictment, together with the overt acts, charges more than a mere seller-purchaser relationship. The conspiracy count, therefore, was sufficient.

█ Sufficiency of the evidence to support the convictions was raised by proper motion for judgment of acquittal on all counts. While for reasons hereafter stated the case must be reversed, we believe the evidence is sufficient to sustain a conviction on the conspiracy count. As between Lott and Reed, it clearly shows more than a seller-buyer relationship and, circumstantially, that Shaw and Pearce assisted Reed in making sales to Watkins.[3]

Appellant Lott challenges the admissibility of evidence obtained without a search warrant, upon which his conviction on count four rests. That count charged that he unlawfully acquired 198 grains of marihu_a_na, in violation of section 2593(a), Title 26. This marihuana was found by a deputy United States marshal in a shed built on the back of a garage at the rear of Lott's residence. Two deputy marshals had gone there with two narcotic agents and a Ft. Worth city officer, armed with a federal warrant for Lott's arrest. Three of them went to the front door,

2. Citing Young v. United States, 5 Cir., 48 F.2d 26; United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986; See also Lambert v. United States, 5 Cir., 101 F.2d 960, and Judge Hutcheson's concurring opinion in West v. United States, 5 Cir., 113 F.2d 68, 70. Cf. United States v. Harrison, 3 Cir., 121 F.2d 930. All of these cases, except Katz, deal with the sufficiency of the evidence, not the indictment.

3. All appellants except Lott were narcotic addicts, as was the Government's chief witness, Floyd Luke Watkins, who became a paid informer in January, 1953. He testified to numerous purchases of narcotics from Reed in 1950, 1951 and 1953; and to purchase of pantapon tablets from Lott in 1952. He further testified that in 1950 Lott brought some bottles containing "coke" (cocaine) to Reed's house and gave one bottle to Reed; that everyone "shot" it except Lott; that Lott told Reed to buy it for $1.50 a tablet and sell it for $3.00; that later the price went up to $5.00 and Reed said Lott had gone up on him; that he heard Reed ask Lott if he could get him some heavy stuff; that he could make some money out of it; that Lott said he could get plenty; that in 1951 Reed told Watkins he was going to San Antonio to get some heroin; that in January, 1953 after becoming an informer, he went to Reed's house to buy dope and asked Reed for $55.00 worth of "medicine;" that Reed told him he would have

to call Lott; that he heard Reed ask for Lott, who did not show up but that he got his "medicine;" that on one occasion, when Watkins came out of the bathroom at Reed's house, Lott was standing there with some bottles in his hand and later on Reed, Pearce and another addict were fixing to take a shot; that Watkins asked Lott to give him one but Lott refused, telling Watkins that he "didn't have a union card;" but that Lott finally told Reed to give Watkins two tablets which he "shot;" that Lott left some "coke" with Reed; that on one occasion, in April, 1953, when Watkins bought some tablets from Reed, Shaw went outside and brought back and handed something to Reed who then sold the tablets to Watkins. As to Pearce, one of the officers testified that he overheard Watkins arguing with Reed and Pearce about the price "they" were charging him for pills.

As to marihuana, the evidence is very meager. Watkins testified that on one occasion, in 1950, Lott had brought some "weed" (marihuana) to Reed's house, where Reed, Pearce, Shaw and Watkins had smoked it. The only other reference to marihuana was the finding of 198 grains of bulk marihuana in a shed built onto Lott's garage when he was arrested on October 5, 1953. This marihuana is the basis for count 4, charging Lott with unlawfully acquiring such marihuana without paying the tax thereon, next discussed.

entered and made the arrest without difficulty. One of the deputy marshals and a narcotic agent had gone around to the rear, where the yard was enclosed by a wooden fence. The yard gate at the side was locked, so the deputy marshal went to the rear of the garage and, *after waiting a while to give the other officers time to apprehend Lott,*[4] he "pulled off two boards that were nailed on (the door) and started searching the place." He found the marihuana in a paper bag under an old automobile cushion.

■ Over objection, this evidence was admitted by the trial court. Government counsel say this was a proper search of premises under the immediate control of defendant, reasonably incident to his arrest. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. We do not think so. The facts here are more clearly akin to those in Drayton v. United States, 5 Cir., 205 F.2d 35. The deputy marshal's testimony clearly shows, and all the circumstances indicate, that the search was purely exploratory and unreasonable. The garage and shed was not a part of the house. The warrant of arrest was issued by the United States Commissioner on September 30, 1953, based upon an alleged sale of narcotics on February 20, 1953, more than seven months before. The warrant was not executed until October 5, 1953. The officers had plenty of time to secure a search warrant. No reason is given for their failure to secure one. All that was said by Judge Strum in the Drayton case, as well as the authorities cited there, applies here with equal force. This is to be distinguished from United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, where the search was confined to a room, open to the public, being unlawfully used, under the immediate and complete control of the defendant and in his presence. Rather it is the type of unreasonable, general exploratory search condemned in Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 and other cases cited in Drayton, supra. The trial judge erred in admitting this testimony and Lott's conviction on count four cannot stand.

Lott next complains of testimony by a city police officer as to having "handled," and having a picture of, him at the Bureau; and of remarks of the court in first overruling, then sustaining, appellants' motion that the jury be instructed not to consider; and in failing to declare a mistrial. While city officer Baker was testifying as a witness for the prosecution the following transpired:

"Q. Mr. Baker, you have stated very definitely that on at least one occasion there that you did see— two occasions, I believe, that you did see the defendant Johnnie Lott, and named him by name. How did you happen to be so familiar with the appearance of Johnnie Lott? A. Sir, being familiar with Johnnie Lott, I have handled him, I have seen him, I have a picture of him in the Bureau, as an officer.

"Mr. McLean: Just a minute.

"Your Honor, the question and answer elucidated by the District Attorney is of such nature and of such prejudice to the defendant, that this officer has handled the defendant, and in face of the instructions handled and given to the District Attorney by the Court before this trial started, and the instructions of the Court given the District Attorney, we now ask, in all fairness to the defendant John

---

4. The deputy marshal testified: "The three officers who went to the front of the house took the arrest warrant with them, and we allowed considerable time, where we were sure that he was apprehended, but they are not coming around and telling us, then, why, we were sure he was apprehended, but we didn't know that."

Thomas Lott, that the Court now declare a mistrial.

"The Court: We don't think that any inference of conclusion could yet be drawn that would be—that could be reasonably drawn, that would be prejudicial to the defendant to that degree, and we will direct the District Attorney not to —to be careful, and not to do so.

"Mr. McLean: Now, Your Honor, further, we would like at this time an instruction from the Court for the jury to disregard the question and the answer given by the witness Baker.

"The Court: I think that he might state that he did recognize the defendant.

"Mr. McLean: That is correct, Your Honor.

"The Court: And then, if that is to be questioned, let the defendant take him and he can give such information as he desires.

"Mr. McLean: I think if it was brought out on cross examination, sir, it would, sir. May I have my instruction from you, Your Honor, for the jury to disregard the question and the answer given, sir?

"The Court: I don't think that it is necessary on that point to instruct the jury to disregard it, I think that the entire case is before the jury, and the rulings of the Court is very clear. You would be more or less in the attitude of a fellow who was before me the other day and wanted all record of the fact he had ever been convicted of a crime expunged from the record, a crime that had taken place 30 or 40 years ago, and I told him the order expunging it from the record would recite as much as the record itself. So, I mention that, just as a parallel to the situation here. I think that there has been no harm done, and I will instruct the jury, if they have drawn any inference from the question that there has been wrongdoing of any kind or character on the part of the defendant for which he might have been handled, that there is no proof to that effect, and just what was meant by it will be withdrawn from you, and any inference you might draw from it will be withdrawn from you.

"Mr. McLean: Your Honor, with all respect to the Court, but in protection to my client, I would like at this time to take exception to the Court's remarks made concerning another case. I am doing it solely, Your Honor, to protect Mr. Lott, whether I am doing it justifiably, or not, but any reference to a man who had been convicted and ask that that not be brought out, I respectfully except to the remarks.

"The Court: Gentlemen, the Court meant no parallel by the humorous reference to another matter, and this one, so, forget it.

"Mr. Floore: If the Court please, we meant no violation of any instructions or any rule of evidence, we merely intend to show he is familiar with his appearance.

"The Court: We didn't think so. Go ahead."

The foregoing indicates that the court had instructed Government counsel in advance not to allude or refer to Lott's past record in any manner.[5] While counsel did not do this himself, he called for the same thing by the form of his question to the police officer. As might have been expected, the officer lost no opportunity to get Lott's police record into the record of this case in a most damaging fashion. Counsel promptly moved for a mistrial, then for an instruction not to consider, which the court overruled. Then came the unfortunate remarks of the court with refer-

---

5. Appellants' counsel asserts this here as a fact. Counsel for appellee do not dispute it on brief.

ence to another case. While he finally instructed the jury not to consider the "question," (not the answer), we think the method he employed aggravated, rather than helped, the situation.

Standing alone this would not necessarily call for a reversal. But there are other instances of improper testimony, which along with the foregoing, leads us to believe that none of the defendants were convicted strictly on proper evidence of guilt of the particular charges contained in the indictment. For instance: (1) City police officers Lewis, Baker and Hopkins, were permitted to testify that on April 7, 1953, they received a radio pick-up on an automobile "that had stole a bunch of groceries out here of one of the supermarkets;" that they knew the license number was "the same car that Larry Pearce had been making the grocery stores in;" that they wanted to question him about "some stolen property" they had "heard he had in the back of a taxicab from shoplifting;" that on the following day they knocked on Pearce's door; that he was in bed but got up and opened the door and there was a bunch of groceries in the room; that they found three pills on the floor and a hypodermic needle and spoon, and two more tablets in his trousers' cuff after reaching the city hall. These prejudicial and highly improper hearsay statements about shoplifting and theft were developed by the Government, in the presence of the jury, on the theory that the fruits of the search were admissible because it was made by state officers engaged solely in enforcement of state law, not under any agreement, or participation, with federal officers.[6] We doubt that any defendant could receive fair consideration by a jury of the question of his guilt or innocence after such inflammatory testimony.

(2) City officer Hopkins testified that he and other officers were watching appellant Reed's apartment, "that we knew one of these defendants was pushing junk out of." He then identified Reed as the defendant he knew was "pushing junk" out of the apartment. While this particular testimony was not objected to yet, considering the other improper testimony and incident, we think the court, of his own motion, promptly should have stricken it.

None of the defendants testified or put their reputation in issue. Manifestly, the reference to past "handling" of Lott by the officers, the remarks of the court, the hearsay testimony as to Pearce being a thief and shoplifter and the officer volunteering that "we knew one of these defendants (Reed) was pushing dope" out of his apartment, taken together, was of such a nature as to require a new trial for all defendants. They were charged as conspirators and the evidence showed that they were together at various times. It is but natural for a jury to lump them all together.

▬▬▬ This renders it unnecessary to discuss in detail the evidence as to the substantive counts. We will simply say that in our opinion the evidence was sufficient to sustain the conviction of Pearce on counts two and five; and of Reed on counts three and five. But in view of the errors discussed and the erroneous admission of the evidence as to the 198 grains of marihuana, all of which was no doubt considered by the jury in reaching its general verdict of guilt,[7] we feel the convictions on all counts should be reversed for a new trial.

6. As in United States v. Scotti, D.C., 102 F.Supp. 747; Scotti v. United States, 5 Cir., 193 F.2d 644, and Fredericks v. United States, 5 Cir., 208 F.2d 712. While Pearce's counsel objected to the evidence on the ground that there was no search warrant, this has not been specified or briefed here by Lott's attorney, who has handled the appeal for all the appellants.

7. In this connection it is noted that the court did not charge the jury as to the provisions of the laws alleged to have been violated in the susbtantive counts, or the essential elements of the offenses therein charged, except in most general terms. The Court summarized what the substantive counts charged, principally by reference to the indictment, and then said: "In addition to Count One, as we

Upon submission, counsel for appellants raised as alleged fundamental error the fact that the court appointed the same counsel to represent defendants Reed, Pearce and Shaw, citing Glasser v. United States, 315 U.S. 60, 68–76, 62 S.Ct. 457, 86 L.Ed. 680. That case held that Glasser was deprived of his right, under the Sixth Amendment, to the assistance of counsel where the court, over objection, required his counsel to represent a co-defendant, with notice that their interests might be in conflict. Here there was neither objection, claim, nor notice to the court of any alleged conflict between the interests of the three defendants. We hold, therefore, that there was no denial of their constitutional right to the effective assistance of counsel.

In view of another trial, however, we suggest that the court appoint separate counsel for each of the defendants. The record shows, as in Glasser, that numerous hearsay statements were made by Reed and Pearce,[8] some during, some after, the conspiracy had ended, to which separate objections might have been made and concerning which more specific instructions than those given[9]

---

have already set out, you find in the indictment that Counts Two, Three, Four and Five, charge the various defendants with individual acts which are within themselves separate and apart from the conspiracy, amounting to a breaking of the law and upon which a conviction may be had. You will consider each of these counts separately and determine upon the guilt or innocence of the particular defendant mentioned in said count." We doubt that this was a sufficient charge of the law applicable to the various counts. The court should define the various crimes charged, and the elements of each, to the extent necessary to enable the jury to apply the law to the facts. Kenion v. Gill, 81 U.S.App.D.C. 96, 155 F.2d 176, 179; Morris v. United States, 9 Cir., 156 F.2d 525, 169 A.L.R. 305, and cases therein cited. While there was no exception here, some of the cases hold that it is the duty of the court to instruct on all essential questions of law whether requested or not. Morris v. United States, supra; Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495. The great weight of authority is that mere reference in the charge to the information or indictment is not sufficient. Morris v. United States, supra, footnote 6.

In this case, counts two and three charged the unlawful purchase of narcotics, in violation of section 2553(a), Title 26. Count five charged receiving and concealing narcotic drugs theretofore imported contrary to law, in violation of section 174, Title 21. In both instances proof of possession of the narcotics is sufficient to convict unless explained. So that the substantial question at issue is possession by a defendant, Aeby v. United States, 5 Cir., 206 F.2d 296, 299; but the court did not so charge the jury, as was done in the Aeby case, although the convictions here rested upon proof of possession.

8. For instance: (A) After city officer Lewis had testified that he chased Reed to a high board fence near Lott's house and arrested him in March, 1954, he was permitted to testify over objection, that Pearce told him (the officer) a few days later that Reed thought he was pretty smart because he had told Pearce that he had "throwed a bottle of 100 tablets back to Johnnie Lott's back yard;" (B) Narcotics officer Johnson testified, without objection, that Reed told him, after arrest, that Pearce had been down to his place and had a "shot" with some other addicts.

9. The court gave the following general instruction to the jury with reference to declarations of co-conspirators:
"After such conspiracy has commenced, the declaration of one conspirator may be taken against every other conspiractor just the same as the one making it, and until the conspiracy ends this remains true. Before the conspiracy begins the declarations made by one of the parties are not admissible against the others. After it ends the declarations are not admissible. They are admissible, however, while the conspiracy is in effect and after it ends if there is still something to be done by the way of co-operation, as for example, concealing the fruits of their guilt.

"Where one party or defendant makes a statement or an admission and such a statement is offered in evidence it may be considered against him only and in no way binding upon his co-defendants unless you have found from the evidence beyond a reasonable doubt that he and the co-defendants were engaged at the time in the furtherance of an unlawful conspiracy as herein before explained."

might have been requested by separate counsel. Unquestionably, these conflicts of interest will be better served by appointment of separate counsel upon another trial.

The judgments of conviction on all counts will be reversed as to Lott, Reed, Pearce and Shaw, with instructions to enter a judgment of acquittal as to Lott on count four. The appeal of Doris Jeane Miller is dismissed.

The Court did not tell the jury, however, as might well have been requested, that the conspiracy ended when the defendants were arrested and that, to be admissible, the statements must have been made in furtherance of and during the conspiracy. Not all declarations of alleged co-conspirators are admissible against the others—only those made in furtherance of the conspiracy, certainly not after it has ended. Krulewitch v. United States, 336 U.S. 440, 443, 69 S.Ct. 716, 93 L.Ed. 790; Fiswick v. United States, 329 U.S. 211, 216–217, 67 S.Ct. 224, 91 L.Ed. 196; Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L. Ed. 593; Colt v. United States, 5 Cir., 160 F.2d 650.