Charlie Lewis WILLIAMS, Thelbert Eugene Williams, and James E. Pleasants, Appellants,

v.

UNITED STATES of America, Appellee.

No. 7873.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 6, 1959.

Decided Oct. 21, 1959.

David K. Stewart, Dunn, N. C., and Robert L. Gavin, Greensboro, N. C. (Doffermyre, Stewart & Johnson, Dunn, N. C., and Gavin, Jackson & Gavin, Sanford, N. C., on brief), for appellants.

H. Vernon Hart, Asst. U. S. Atty., Greensboro, N. C. (James E. Holshouser, U. S. Atty., Boone, N. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

BOREMAN, Circuit Judge.

Appellants, defendants below, were found guilty on the first count of a seven count indictment charging them and others with conspiracy to violate the White Slave Traffic Act, 18 U.S.C. § 371.[1] In addition to conviction on the first count, defendants Charlie Lewis Williams and James E. Pleasants were convicted of substantive violations of the White Slave Traffic Act set forth in the second and sixth counts, respectively.

Charlie Lewis Williams, a resident of Benson, North Carolina, was engaged in the wholesale gasoline and oil business at certain locations in North Carolina and South Carolina on Highway 301. These locations were primarily truck stops with restaurant facilities where numerous prostitutes, in the guise of waitresses, were plying their trade. During February 1958, special agents of the Bureau of Investigation began an investigation of the locations owned and leased by Charlie Lewis Williams to determine whether activities there constituted violations of 18 U.S.C. §§ 2421–2422. Specifically, the locations under investigation were: Benson Motor Court and Bus Station, operated by Shirley McDaniel, a stepdaughter of Charlie Lewis Williams, and her husband under lease from Charlie Lewis Williams; Truckers' Rest Truck Stop at Wagram, North Carolina, operated by Thelbert Eugene Williams, a nephew of Charlie Lewis Williams; Carolina Truck Stop at Laurinburg, North Carolina, operated and managed part of the time by James E. Pleasants and F. L. McLamb; Jim's Truck Stop at Society Hill, South Carolina, operated a portion of the time in question by James E. Pleasants, a nephew of Charlie Lewis Williams or Mrs. Charlie Williams; and Tobacco Trail Truck Stop at Wilson, North Carolina. Floyd L. McLamb, who was not related to Charlie Lewis Williams, entered a plea of guilty. Shirley W. McDaniel was convicted but did not appeal.

The first assignment of error is that prejudicial error resulted from certain statements or comments over objection of defense counsel. In support of their argument, they cite the following statement made by the Assistant United States Attorney: "Your Honor, we have got a conspiracy and he was * * *". The court interrupted and stated: "I know we have a conspiracy". Counsel argues that at this time no conspiracy had been established and that these statements, made before the jurors, could have misled them into believing that the court was of the opinion that a conspiracy had been established.

 It is well settled that isolated instances of possible prejudice will not form the basis for reversible error. Todorow v. United States, 9 Cir., 1949, 173 F.2d 439, 448; Ochoa v. United States, 9 Cir., 1948, 167 F.2d 341, 344. See Beaty v. United States, 4 Cir., 1953, 203

1. 18 U.S.C. § 371. "Conspiracy to commit offense or to defraud the United States.

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

F.2d 652, 657. The remarks complained of occurred at the beginning of the trial and, at that time, it would have been impossible for the court or anyone to have formed or expressed an opinion concerning the guilt or innocence of these appellants as to conspiracy as there was then no evidence before the court upon which to base an opinion. Upon an examination of the entire record, we are impressed by the complete fairness and impartiality exhibited by the trial judge throughout the trial and in the court's charge to the jury. Appellants are attempting to lift out of context two separate comments, completely ignoring the balance of the record. At no time throughout the trial did the court express an opinion as to the guilt or innocence of the defendants. On the contrary, the jury was told to keep an open mind and to make no determination until all of the evidence had been presented. We conclude that the statement made by the trial judge was a mere acknowledgment on his part that the case before the court involved a charge of conspiracy and that the jurors could not have been misled thereby.

██ As a second assignment of error, the appellants urge that the evidence was insufficient to sustain their conviction under any of the counts of the indictment. There was a motion for a directed verdict of acquittal at the close of the Government's case and it is well settled that, upon such motion, it is the duty of the trial judge to determine whether there is substantial evidence which, taken in the light most favorable to the prosecution, would justify a finding of guilty beyond a reasonable doubt. Linden v. United States, 4 Cir., 1958, 254 F.2d 560; Bell v. United States, 4 Cir., 1950, 185 F.2d 302; Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. It is true that the burden is upon the United States to prove the guilt of the defendants beyond a reasonable doubt; also, it is the duty of the court to define and explain the meaning and application of "reasonable doubt". The court's charge in that particular was clear, forceful and unchallenged. The evidence, the sufficiency of which is challenged, is later reviewed and evaluated.

### The Conspiracy Count

█ The evidence disclosed that Charlie Lewis Williams owned, leased, operated or sublet each of the truck stops here involved and that all bookkeeping for the truck stops was done in his headquarters at Benson Motor Court and Bus Station at Benson, North Carolina. There was a close family relationship, as well as a close business relationship, between and among these defendants. There was evidence that Charlie Lewis Williams participated in the profits of the illegal enterprise at each truck stop; that the cash received by each prostitute from customers was placed in a cigar box, identified by a "guest check", with the name of the prostitute thereon and the amount received; that each girl was furnished with a book of "guest checks"; that division of earnings was made by the operator with each prostitute at the end of each day or "work period", the operator retaining one-half; that the operator placed his share of earnings in an envelope; that envelopes, with names of prostitutes thereon and containing cash, were seen at headquarters at Benson; that each prostitute wore the uniform of a waitress and served food to customers at the truck stop restaurant although she received no salary; that the earnings of each girl were derived solely from prostitution; that the records kept at the Benson office falsely indicated the payment of salaries through social security withholdings and payments; that these defendants participated in the profits of the illegal enterprise; and that this same custom or pattern was followed at each of the truck stops.

There was evidence that numerous telephone calls were made from telephones located at the truck stops to or from different women in Virginia, South Carolina, Georgia, West Virginia, New York and Florida, and that some of the women named were identified as having been engaged in prostitution at one or

more of the truck stops. Further evidence of the coalition, arrangement and conspiracy is supplied by evidence of the constant interchange of confessed prostitutes from one of these truck stops to another located in North Carolina and South Carolina. There is no question as to the sufficiency of the evidence tending to establish an arrangement, agreement and conspiracy between and among the three appellants and other defendants named in the indictment to conduct an interstate illegal and immoral enterprise at these various truck stops, and as charged in the first count of the indictment.

◼ As stated by this court, speaking through Soboloff, Chief Judge, in Pittsburgh Plate Glass Co. v. United States, 4 Cir., 1958, 260 F.2d 397, at page 401, "The proposition is too elementary to require elaboration, that participation in a criminal conspiracy need not be proved by direct evidence; 'a common purpose and plan may be inferred from a "development and a collocation of circumstances." ' Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680." See also United States v. Wilson, D.C.N.D.W.Va.1927, 23 F.2d 112, 117, where it is held, " * * * such charge [of conspiracy] may be sustained by evidence showing concert of action in the commission of the unlawful act, or by proof of other facts from which the natural inference arises that the unlawful overt act was in furtherance of a common design of the alleged conspiracy."

Next we look for evidence as to an overt act committed by one of the conspirators in furtherance of the plan. This element is sufficiently supplied by our finding on the second count of the indictment against Charlie Lewis Williams.

### Count 2, Charlie Lewis Williams

One of the overt acts charged in the first count of the indictment was as follows: "In May, 1958, Charlie Lewis Williams, for immoral purposes, transported Ella Vernall Wheeler from Melbourne, in the State of Florida, to Benson and to Wagram, in the Middle District of North Carolina." The second count charged that "On or about May, 1958, Charlie Lewis Williams knowingly transported Ella Vernall Wheeler from Melbourne, in the State of Florida, to Benson and to Wagram, in the State and Middle District of North Carolina, for the purpose of prostitution and debauchery and for other immoral purposes," and was based upon 18 U.S.C. § 2421 which makes it an offense to knowingly transport, in interstate commerce, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose.

The evidence of interstate transportation introduced against Charlie Lewis Williams came from the testimony of Ella Vernall Wheeler, who had previously worked for him at the Benson Motor Court and Bus Station in Benson, North Carolina. According to her story, she left Benson and went to Melbourne, Florida, to live. In May 1958, she telephoned Charlie Lewis Williams and advised him that she wanted to return to work and, upon advising him that she needed money, she was assured that he would send her $50.00. Subsequently, Miss Wheeler received $50.00 by wire from Shirley McDaniel, who was then operating the Benson Motor Court and Bus Station and who, as hereinbefore stated, was a stepdaughter of Charlie Lewis Williams. Miss Wheeler came to Benson, North Carolina, by bus and, upon arrival, began working for Shirley McDaniel and her husband. Later, by prearrangement, she moved to Truckers' Rest at Wagram, North Carolina, operated by Thelbert Eugene Williams, where she engaged in prostitution. While working at Truckers' Rest, she overheard Charlie Lewis Williams and Thelbert Eugene Williams agree that the profits from Truckers' Rest would be divided between them.

In Ege v. United States, 9 Cir., 1957, 242 F.2d 879, the accused contended that it was not shown that he caused the girl to be transported in violation of § 2421. The evidence disclosed that he had given

her $50.00 for expenses. The court stated that this was the equivalent of presenting her with a plane or a train ticket and telling her to go. The court said that such conduct goes beyond mere persuading or inducing, and that if a man advances money which is used by a woman in accordance with his plan, and he has persuaded and induced her to make the trip for the purposes of prostitution, he has caused the woman to be transported in violation of § 2421. See also Lattanzio v. United States, 9 Cir., 1957, 243 F.2d 801.

■ The reasoning of the Ege case applies with equal force to the instant case. Charlie Lewis Williams told the Wheeler woman that he would send her money and subsequently she received, by wire, the sum of $50.00. Even though the wire was from Shirley McDaniel, it is a fair inference, and the jury would be justified in concluding from the circumstances, that the money was furnished by Charlie Lewis Williams. As pointed out in the Ege case, the act of furnishing the money which is used for the interstate trip in accordance with a plan of the one who furnishes the money goes beyond mere persuading and inducing. The offense is complete the moment the woman crosses a state line with the intent in the mind of the person responsible for her transportation that she shall engage in prostitution or other immoral activities. Batsell v. United States, 8 Cir., 1954, 217 F.2d 257, 261, approved in Bell v. United States, 8 Cir., 1958, 251 F.2d 490, 491.

It is clear that Miss Wheeler was transported in interstate commerce for the purpose of prostitution. From past dealings, Charlie Lewis Williams knew the girl to be a prostitute. He agreed to send her money for the trip. It may fairly be inferred that he furnished the money to Shirley McDaniel to send to her. Shirley McDaniel operated the place of prostitution in which Miss Wheeler could carry on her iniquitous profession. Charlie Lewis Williams was a profit-sharing partner in this illegal enterprise.

■ "An overt act must accompany or follow the agreement, and it must be done in furtherance of the object of it. Blumenthal v. United States, 9 Cir., 1946, 158 F.2d 883, affirmed 1947, 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154; Marino v. United States, 9 Cir., 1937, 91 F.2d 691 [113 A.L.R. 975]." Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1956, 232 F.2d 190, 192, 193. See also Pierce v. United States, 1920, 252 U.S. 239, 40 S. Ct. 205, 64 L.Ed. 542, cited with approval in Yates v. United States, 1957, 354 U.S. 298, 334, 77 S.Ct. 1064, 1 L.Ed.2d 1356.

The evidence of the charge against Charlie Lewis Williams of transportation of the Wheeler woman in interstate commerce for immoral purposes is sufficient to sustain the conviction under Count 2, and is sufficient proof of the overt act which is charged in Count 1 as having been done in furtherance of and to effect the object of the conspiracy.

Count 6, James E. Pleasants

■ Count 6 of the indictment charged James E. Pleasants with knowingly transporting Nancy Williams from Laurinburg, North Carolina, to Society Hill, South Carolina, for the purpose of prostitution and debauchery and for other immoral purposes. The evidence to support this count came from Special Agents Paul D. Shiller and Lacy M. Walthall, Jr. They testified that on April 17, 1958, they observed an automobile operated by James E. Pleasants as it crossed the dividing line between North Carolina and South Carolina. In addition to Pleasants, the automobile was occupied by Pleasants' wife and child, Nancy Williams and an unidentified woman. The officers followed this car to Jim's Truck Stop in South Carolina where all of the occupants of the Pleasants automobile left the car and entered the Truck Stop. On the following day, April 18, 1958, Nancy Williams, a known prostitute, was seen working in Jim's Truck Stop as a waitress. Agent Walthall overheard Nancy Williams ask a truck driver, "Are you ready?", and then observed Nancy and the man leave the room by the back door.

Standing alone, this evidence would not have been sufficient to convict Pleasants of the substantive offense of transporting Nancy Williams interstate for purposes of prostitution. But the nature of the journey may be gathered from the entire factual context which abundantly shows the illegal plan. We cannot say that the jury could not, in the circumstances, arrive at the belief beyond a reasonable doubt that Nancy Williams was engaged in prostitution on April 18 and that Pleasants transported her on April 17 for that purpose.

The convictions of Charlie Lewis Williams, Thelbert Eugene Williams and James E. Pleasants on count one are affirmed. The conviction of Charlie Lewis Williams on count two, and the conviction of James E. Pleasants on count six are likewise affirmed.

Affirmed.