**UNITED STATES of America,**
**Appellee,**

v.

**Roy Mitchell QUINN and John Elton**
**Whitlow, Appellants.**

**No. 8723.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 7, 1963.

Decided March 12, 1963.

R. R. Ryder, Richmond, Va., for appellants.

H. Garnett Scott, Asst. U. S. Atty., for appellee.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Violation by appellants, Roy Mitchell Quinn and John Elton Whitlow, of the liquor provisions of the Internal Revenue Code, 26 U.S.C. § 5686(a)—the unlawful possession of property intended to be, and actually, used in contravention of those provisions—was found by the jury upon ample evidence under a charge not erroneous, and so we affirm the conviction.

The amplitude of the proof demonstrates the soundness of the trial court's judgment in denying peremptory acquittal, the first ground assigned for this appeal. Agents of the Alcohol Tobacco Tax Division, United States Treasury, in April, 1962 discovered an illicit still in operation in Patrick County, Virginia, about a half mile from Route 40. Before and after the discovery they kept this segment of the highway under surveillance day and night. The point to which they bent their attention was suspected to be a "carry-off", a place along the highway where materials for a still may be readily and without trace unloaded or its products taken away.

About four o'clock A.M. on April 9 an Agent saw a black 1961 Ford car, bearing Virginia license 867–874, pass this spot. A half-hour later another Agent

observed a 1961 dark-colored Ford parked on the highway in the vicinity of the carry-off; he also saw flashlights moving into the woods at the road's edge. The car then drove past the Agent but soon turned and went off in the opposite direction. Around seven o'clock that morning, the same Ford was seen in a nearby village, with Whitlow driving and Quinn, the other appellant, a passenger.

Next day, April 10, near ten o'clock P.M. the Agent entered the woods where the automobile had been seen the night before. He followed a path and within a half-mile was led for the first time to the distillery. The evening of April 11, shortly before eight o'clock, the Agent saw the Ford stop at the carry-off. Bags such as customarily contain sugar, and cardboard boxes or cases of the type used to carry empty fruit jars, were unloaded. Other boxes appearing to be of considerable weight were then loaded into the car. Thereupon it left, again went a little way down the road, turned and re-passed the loading point. It carried the same Virginia license number, 867-874.

First waiting about an hour and a half, the Agent entered the woods near where the car had been. He found, not far from the highway, what appeared to be sugar bales and empty fruit jar cases, all tidily stacked under a tarpaper covering. He rattled them but did not open either. Staying through the night, he saw the Ford again come to the carry-off and unload cases. This was between five and seven-forty-five o'clock on the morning of April 12th. Watching again that night, an Agent saw the Ford unloaded at the carry-off and hearing Quinn's voice identified him as a participant.

At three A.M. on the following morning, April 13, the Ford came back, discharged cases and bags and loaded other objects. Flashlights were used in the work, and these together with matches lighting cigarettes, revealed both Quinn and Whitlow to the Agent. Soon after they had gone, " a number of empty fruit jar cases and 12 gallons of non-tax paid whiskey" were found just inside the edge of the woods where the men had been.

Later that morning, the still was again found in full operation and was destroyed by the Agents. That day Quinn and Whitlow were arrested. The car was then parked at Quinn's residence with the back seat removed. Title to it was in the name of Whitlow.

This account, which the Agents gave of their observations, was not denied by either accused. The materials they saw were quite adequately established in the circumstances as "property intended for use" and "used" in violation of the Internal Revenue laws. To say the description was fatally wanting because the Agents did not open the bags, boxes or cases to identify the contents as sugar or fruit jars is to cavil. The identification suffices.

■ The other error pointed at the conviction is the absence in the instructions of a *definition* by the Court of "reasonable doubt". The burden of the prosecution to prove its case beyond a reasonable doubt was expressly charged. At trial no request was made for a defining instruction and no objection raised to its omission.

Under Rule 30, F.R.Cr.P. error may not be assigned to any portion of the charge or for any "omission therefrom" unless objection is made before the jury retires. Opportunity for exceptions was afforded defendants but the point now urged was never mentioned to the District Court. Existence of the opportunity was recognized by counsel by his timely assertion of other exceptions.

While some further exposition by the Court of "reasonable doubt" might have been given, Williams v. United States, 271 F.2d 703, 705 (4 Cir., 1959), we are unwilling to say the failure to do so, when not requested, was error. Raffour v. United States, 284 F. 720 (9 Cir., 1922); see United States v. Jonikas, 197 F.2d 675, 679 (7 Cir.), cert. denied, 344 U.S. 877, 73 S.Ct. 171, 97 L.Ed. 679 (1952); cf. Kenion v. Gill, 81 U.S.App. D.C. 96, 155 F.2d 176, 179 (D.C.Cir. 1946). At least in this trial the absence of any enlargement upon "reasonable

**427**

doubt", not brought to the attention of the trial court, did not affect the substantial rights of the accused so as to require notice of it by this Court non obstante under Rule 52(b) F.R.Cr.P.

Nothing pressed on this appeal warrants disturbance of the judgment of conviction.

Affirmed.