**UNITED STATES of America,**
**Appellee,**

v.

**Charles Wayne BROWN and James Louis**
**Brown, Appellants.**

**No. 8980.**

United States Court of Appeals
Fourth Circuit.

Argued Sept. 27, 1963.

Decided Nov. 4, 1963.

R. A. Collier and Jack R. Harris, Statesville, N. C. (Collier, Harris & Collier, Statesville, N. C., on brief), for appellants.

James O. Israel, Jr., Asst. U. S. Atty. (William Medford, U. S. Atty., and Robert J. Robinson, Asst. U. S. Atty., on brief), for appellee.

Before BRYAN and BELL, Circuit Judges, and WINTER, District Judge.

ALBERT V. BRYAN, Circuit Judge.

"Possession of distilled spirits", as denounced in 26 U.S.C. 5205(a) (2),[1] was not defined in the charge of the District Court to the jury, Charles Wayne Brown and James Louis Brown now assert in this appeal from their conviction for violating the statute. This assignment of error we find factually accurate, but we do not think it is ground for reversal under the circumstances.

About 9 o'clock on the night of October 12, 1962 Deputy Sheriff Perkins of Iredell County, North Carolina and Investigator Marshall of the Federal Alcohol and Tobacco Tax Division found a 1950 Pontiac automobile parked in the woods of the Coddle Creek section of the County,

1. "(2) Containers of other distilled spirits.—No person shall * * * possess * * * any distilled spirits, unless the immediate container thereof is stamped by a stamp evidencing the determination of the tax or indicating compliance with the provisions of this chapter. * * *"

near the homes of Charles and James Brown. The car contained 63 gallons of nontaxpaid whiskey.

James Brown's house was located on a secondary roadway where it intersects a State highway. His father lived across this road, and beyond the father's house was the residence of Charles Brown, the other appellant. On James' side of the roadway was a small outbuilding, which together with the home of James was located on land belonging to the father. Charles owned the lot on which he resided. The outbuilding was approximately 225 feet to the rear of James' house, and about the same distance from that of Charles. The automobile was some 100 yards behind James' home.

Concealing themselves, the officers stayed in the vicinity throughout the night. Their testimony reveals: that at four o'clock in the morning Charles arrived at his home in a station wagon where he could be seen by the front porch lights; that immediately he walked towards James' house and then out of view; and in a few minutes a 1956 Ford automobile drove past James' residence and stopped at the outbuilding. While the Federal officer could not see them because he was behind the Pontiac car, Sheriff Perkins gives this further account: Charles and James Brown, together with Parnell Combs, a codefendant convicted at the trial but not appealing, carried cardboard boxes from the Ford into the outbuilding; that these men then left; and soon thereafter another car drove from James' home out into the highway.

An hour or more passed before the two Browns and Combs returned to the small building. Combs was arrested by Agent Marshall after he opened the door to the 1950 Pontiac, and Charles and James were later apprehended as they approached the car.

In the outbuilding were 96½ gallons of untaxpaid whiskey in containers packaged in cardboard boxes such as the officer had seen carried in by the Browns and Combs. No evidence whatsoever was offered to refute the testimony of the officers that the liquor in both caches was

whiskey; nor did the appellants deny the presence of the whiskey at either place.

The sole defense of the Browns was that they had no knowledge of the whiskey, since they were not present during the events related by the officers. Both appellants say they left their homes about four o'clock on this morning to go to a restaurant, a short distance away, to obtain a Bromo Seltzer for James' headache. According to them, they returned to the vicinity of their residence around six o'clock A.M. to search through an adjoining automobile junkyard for a tow bar for use in an early trip to Washington, D. C. It was in this search, the appellants explain, that they ran into the officers.

On this evidence the Court charged the jury by repeating the accusation in the indictment, giving a brief résumé of the testimony and admonishing the jury as to the presumption of innocence and the burden and requisites of proof. Nothing was said in the charge by way of definition of "possession" or of "distilled spirits". The latter omission we need not notice because the testimony, as already shown, was ample to prove the contents both of the Pontiac automobile and the outbuilding to be whiskey, concededly distilled spirits.

The charge undoubtedly should have included an explanation of possession. It was the predominant element of the crime laid in the indictment. Indeed, in every prosecution care should be taken to instruct the jury on the constituent elements of the offense and the meaning of each of them, with the admonition that all of them are necessary to the existence of the offense. On the other hand, it was the obligation of the defendants under Rule 30, Federal Rules of Criminal Procedure, to object to the omission before the jury retired. Opportunity for the objection was provided the defendants, but they affirmatively declined to request the Court for an additional charge. Now they rely on Rule 52(b) which requires us to notice "[p]lain errors or defects affecting substantial

rights * * * although they were not brought to the attention of the [trial] court."

In this contention the appellants cannot prevail. The absence in the charge of any exposition of possession did not entrench upon the "substantial rights" of the appellants because no issue of possession was made at trial. If the two Browns were in truth present as the officers recounted, then the evidence undeniably proved possession. Admittedly, it might have been argued that the finding of the whiskey and its location did not alone prove possession on the part of either defendant, as there was a question about the custody or control of the Pontiac and on whose premises the Pontiac and the outbuilding were located. However, if believed by the jury, the direct testimony of Sheriff Perkins of his observation of James and Charles Brown and Parnell Combs in the removal of the whiskey from the Ford to the small house, in law as well as in fact conclusively put the Browns in possession of illicit whiskey.

Thus the defense of alibi raised the only issue at trial, and so the failure of the Court to instruct on the meaning of possession, while not to be approved, was not reversible error in the absence of a request for an interpretation. Under kindred facts it was so held in Ketchum v. United States, 259 F.2d 434, 437 (5 Cir. 1958), the Court saying:

" * * * Appellants argue that the court erred in not instructing the jury on the meaning of 'possession'. The appellants made no request for such instructions and did not except to the court's charge. Now they contend that failure of the trial court to include in the charge a definition of 'possession' is a plain error affecting substantial rights of which this Court should notice under Rule 52(b) * * *.

" * * * But as a matter of law, failure to instruct is not erroneous in every case where 'possession' is a relevant issue. * * * 'There was ample evidence in this case which, if believed as the verdict shows it was, sustains the conclusion that the appellants had the custody and control of the cars in question. Custody and control are the commonly accepted and generally understood incidents of possession. No peculiar condition requiring that "possession" be defined was here present.' "

This view was sustained, too, in Beale v. United States, 263 F.2d 215, 216 (5 Cir. 1959). The same principle was enunciated by this court in United States v. Davis, 320 F.2d 660 (4 Cir. 1963), with opinion by Judge Haynsworth. See also United States v. Quinn, 315 F.2d 425, 426 (4 Cir. 1963). We do not overlook the different result in United States v. McKenzie, 301 F.2d 880 (6 Cir. 1962). The evidence there, however, was not so complete in its establishment of possession as the circumstances in which the appellant Browns were discovered. Thus that decision is not contrary to the conclusion we reach here.

Affirmed.