UNITED STATES of America,
Appellee,

v.

Edward SALLIEY, Appellant.

No. 10020.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1965.

Decided March 16, 1966.

Sanford Jay Rosen, Baltimore, Md. (Court-assigned counsel), for appellant.

Fred K. Grant, Asst. U. S. Atty. (Thomas J. Kenney, U. S. Atty., and Paul R. Kramer, Asst. U. S. Atty., on brief), for appellee.

Before BOREMAN and BRYAN, Circuit Judges, and MARTIN, District Judge.

MARTIN, District Judge.

Appellant, Edward Salliey, was indicted by the Grand Jury for the District of Maryland upon six counts charging violation of 18 U.S.C. § 2314 and § 2.[1] A four-day trial resulted in a jury verdict

---

1. 18 U.S.C. § 2314, provides in pertinent part: "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited, shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

18 U.S.C. § 2, provides: "(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal. (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

of guilty as to the first four counts of the indictment and not guilty as to the remaining two counts. From the judgment of conviction this appeal is taken. Appellant complains there are fatal defects in three areas of the proceeding against him: (1) in the indictment, (2) in the trial judge's charge to the jury, and (3) in some of the pre-trial procedure.

 Counts 1 and 3 of the indictment charge appellant with transporting or causing to be transported two forged checks from Baltimore, Maryland, to Washington, D. C. The checks purported to be payroll checks of Loewy Drug Company of Baltimore. On each check the payee and the amount were identical. Counts 2 and 4 charge appellant with transporting or causing to be transported these two checks back from Washington to Baltimore. Except for the points where the transportation began and ended, the language of all counts is the same.[2] Appellant contends the indictment is fatally defective because it fails to allege that he "willfully caused" the interstate transportation of the checks in question as required by 18 U.S.C. § 2(b).

Each count of the indictment alleged that the defendant "with unlawful and fraudulent intent, did transport and cause to be transported" forged checks in interstate commerce "knowing the same to be falsely made, forged, altered or counterfeited." Although the term "willful" is omitted, the language is sufficient to charge a violation of § 2(b), which provides that a person who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." The rule is: "Where willfulness or knowledge is made an element of the crime, the statutory requirement is not to be ignored. The charge [in the indictment] must either include these terms, or words of similar import." Finn v. United States, 256 F. 2d 304, 306 (4 Cir. 1958). The rule was recently adhered to in United States v. Chunn, 347 F.2d 717 (4 Cir. 1965); and in United States v. Martell, 335 F.2d 764 (4 Cir. 1964). As the *Finn* case notes, the term "willful" is a word of many meanings. Other courts have taken the same view as in Londos v. United States, 240 F.2d 1, 7 (5 Cir. 1957), it was said:

> Even if it were necessary for the Government to allege its case within the terms of 18 U.S.C.A. § 2(b) the allegation that appellants unlawfully and fraudulently caused the transportation is a sufficient allegation that they *willfully* caused it. [Emphasis in original].

When the accepted rule is applied to the indictment, the element of willfulness is sufficiently alleged by words of "similar import."

 Appellant further contends that the language of the indictment, "did transport and cause to be transported" limited the government to an instruction only on 18 U.S.C. § 2(b), whereas the court instructed the jury not only on § 2(b) but also on § 2(a), the aiding and abetting provision. It is true that the court, after reading to the jury the substantive offense of 18 U.S.C. § 2314, also read both §§ 2(a) and 2(b). Thereafter these sections were explained to the jury

2. Count I of the indictment serves as illustration:

On or about the 16th of June 1964, Edward Salliey, with unlawful and fraudulent intent, did transport and cause to be transported from Baltimore in the State and District of Maryland to Washington, in the District of Columbia, a falsely made forged, altered, and counterfeited security, to wit a check of the Loewy Drug Company, 1100 North Chester Street, Baltimore, Maryland, drawn on the Maryland National Bank, Baltimore, Maryland, in the amount of $80.80, dated June 12, 1964, bearing No. 4720, payable to the order of Donna L. Plumley, bearing the forged signature of Phil Levin, purported drawer, and cashed at Norbert Wolff, Inc., T/A Edith Infants and Children's Apparel, 1223 H. Street, N. E., Washington, D. C., the said defendant then knowing the same to have been falsely made, forged, altered and counterfeited. Title 18, § 2314, United States Code. Title 18, § 2, United States Code.

together with a full instruction on the element of willfulness. Considering the quoted portion of the indictment together with the facts adduced at trial it was proper for the trial judge to instruct aiding and abetting as well as willfully causing. The government never limited its theory of the case exclusively to the confines of § 2(b). To so argue completely ignores that, with respect to one of the three checks involved, (one on which appellant was acquitted) the government contended appellant himself "probably transported" it. With this factual issue before the jury, the trial judge would have been remiss had he not charged transportation of *and* aiding and abetting in the transportation of the check in question.

■ The main thrust of appellant's appeal is his contention that the trial judge failed to charge the jury properly. The checks in question were purportedly signed by Phil Levin, President of Loewy Drug Company. Levin testified that while the checks did bear his name the signature was not his, that he had never authorized issuance of the checks and that he had not authorized anyone to sign his name to them. Appellant contends that since one of the elements of the crime proscribed by § 2314 is the presence of forgery and since lack of authority is an element of forgery, then lack of authority is a necessary element of a violation of § 2314. The trial judge declined to charge the jury on lack of authority, and appellant assigns error for failure to charge this necessary element of the crime. He asserts that by failing to so charge the judge withdrew from the jury's consideration the question of whether there was any authority for the signature on the checks. In the light of the testimony, this argument must fail.

■■ Instructions to the jury must include the essential elements of the crime charged, United States v. Harris, 346 F.2d 182 (4 Cir. 1965), and this constitutes the most important part of the instructions. United States v. Hutchison, 338 F.2d 991 (4 Cir. 1964). But the cardinal principle of *Harris* must be applied within the context of the facts as developed in a given case, and a trial judge's instructions to the jury must reasonably relate to the factual situation of the case. As was pointed out in Graham v. United States, 88 U.S.App.D.C. 129, 187 F.2d 87, 90 (1950):

> It is enough that the trial court correctly charges the jury as to the law with respect to the particular situation before it, and leaves no doubt as to under what circumstances the crime can be found to have been committed.

■ Assuming, *arguendo,* that lack of authority is one of the essential elements of forgery, it is not such an element here. What a jury must resolve are issues of fact. To reach the truth of such issues full and proper instructions of applicable law are indispensable. At the same time it must be remembered that:

> The purpose of a charge is adequately, yet succinctly, to instruct the jury as to its function, which is the independent determination of the facts, and the application of the law, as charged by the court, to the facts, as found by the jury. Repetitious and unnecessarily long charges are confusing to a jury and prevent it from properly exercising its function. United States v. Perisco, 349 F.2d 6, 8 (2 Cir. 1965).

■ Where there is no issue of fact to resolve, it is superfluous to submit unnecessary instructions to the jury. Appellant concedes that evidence of lack of authority was "unchallenged and uncontroverted;" it was not even subjected to cross-examination. "There can be no 'issues of fact' where there is no controversy as to the facts. And there can be no issue as to fact where credible testimony with respect to it is neither denied nor impeached." Guy v. United States, 336 F.2d 595 (4 Cir. 1964). There was no issue of fact concerning authority or lack of authority, therefore, there was nothing for the jury to resolve in that regard. The jury was properly instructed as to the essential elements of the crime in the light of the facts of this case, and all questions of law raised by

such issues of fact were amply covered by the instructions. Where facts are uncontroverted the Court may assume their existence, and an instruction which assumes an admitted and uncontroverted fact cannot be held to be erroneous. Guy v. United States, id.; Lyons v. United States, 325 F.2d 370 (9 Cir. 1963); Malone v. United States, 238 F.2d 851 (6 Cir. 1956); United States v. Jonikas, 197 F.2d 675 (7 Cir. 1952); United States v. Rainone, 192 F.2d 860 (2 Cir. 1951); United States v. Mura, 191 F.2d 886 (2 Cir. 1951).

◼ Appellant makes other objections to the Court's instructions which do not require individual exposition. It is sufficient to say, that in each of these claims appellant has seized upon isolated phrases and sentences and lifted them out of context. This Court in Williams v. United States, 271 F.2d 703, 704 (4 Cir. 1959) disposed of similar contentions in language which is appropriate here:

> It is well settled that isolated instances of possible prejudice will not form the basis for reversible error. * * * Upon an examination of the entire record, we are impressed by the complete fairness and impartiality exhibited by the trial judge throughout the trial and in the court's charge to the jury. Appellants are attempting to lift out of context two separate comments, completely ignoring the balance of the record. [citations omitted]

◼ The third area of contention arises from pre-trial procedures. Specifically, appellant contends that the indictment should have been dismissed or he should now be given a new trial because he was illegally arrested and illegally incarcerated for three weeks without a finding of probable cause as required by Rule 5(c), Federal Rules of Criminal Procedure. The arrest warrant was issued on June 23, 1964, upon complaint of an FBI agent. Appellant was arrested the following day by officers who did not have the warrant in their possession but who took him directly before the United States Commissioner. Appellant contends that the affidavit attached to the officer's complaint, as required by Rule 3, Federal Rules of Criminal Procedure, was insufficient to form a basis for determining probable cause for issuance of an arrest warrant. While the affidavit is almost entirely hearsay, "hearsay may be the basis for a warrant," Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); where the sources of the complaining officers' information are set forth, Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); where there is corroboration of the hearsay matters, Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); and where there is other sufficient basis upon which a finding of probable cause could be made. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); United States v. White, 342 F.2d 379, 381 (4 Cir. 1965). Examination of the affidavit in question clearly shows that it was sufficient to inform the Commissioner of some, if not all, "of the underlying circumstances" relied on by the complaining officer and some, if not all, "of the underlying circumstances from which" the officer "concluded that the informant * * * was 'credible' or his information 'reliable.'" Aguilar v. State of Texas, supra. Unlike the cases of *Jones* and *Aguilar,* the affidavit in question contained the names of several informants together with their connection with the investigation by reason of their employment. As with *Jones* wherein the affidavit was deemed sufficient, but unlike *Aguilar* wherein it was deemed insufficient, the information supplied by each of the named persons was set forth. The affidavit was sufficient to form a basis to determine probable cause,[3] and the arrest warrant is not illegal for want of probable cause.

3. See discussion in footnote 3, United States v. White, supra, 342 F.2d at p. 381, wherein it is assumed, as we assume here, that the *Jones* and *Aguilar* decisions as to probable cause to issue search warrants are equally applicable to arrest warrants.

The arrest by officers not in possession of the outstanding warrant was legal. Rule 4(c)(3), Federal Rules of Criminal Procedure, as it relates to such situations, in plain language provides, that the officer "need not have the warrant in his possession at the time of the arrest."

Although appellant makes no further complaint of failure to comply with Rule 4, he urges that Rule 5(c)'s requirement of holding a preliminary hearing within a reasonable time was not met. Following appellant's arrest on June 24, 1964, he was incarcerated and did not post bond. On July 14, 1964, the Grand Jury returned the indictment. During the three weeks between his arrest and the Grand Jury's determination of probable cause no hearing was had before the Commissioner. At an abortive arraignment proceeding on August 28, the District Judge suggested that a preliminary hearing be afforded the appellant even though an indictment had been returned. Subsequently a new warrant, identical to the first one, was issued and a hearing was held before the Commissioner. Appellant contends that procuring the issuance of the new warrant worked to dismiss the outstanding indictment against him. This position is untenable since the only reason for the issuance of a new warrant was to comply with the technical prerequisites of holding a preliminary hearing, which appellant was then complaining he had been denied. Moreover, appellant's charge of failure to comply with Rule 5(c) became moot when the Grand Jury found probable cause to prosecute. See Barber v. United States, 142 F.2d 805 (4 Cir. 1944); United States v. Brace, 192 F. Supp. 714 (D.C.Md.1961).

Whether an unexplained delay of three weeks, in and of itself, may be declared unreasonable is not the question presented; the delay in this case was harmless since such delay was occasioned by the appellant requesting a specified attorney be called to represent him, and hearing was postponed for this reason. The appellant several times prior to trial procured continuances by representing to the court that he needed more time to hire counsel. Including the time of trial, he was associated with at least five attorneys and actively represented by three. On the eve of trial he dismissed one of his two court-appointed counsel and on the third day of trial attempted to dismiss the other. It was similar conduct that prompted another court to say in Vitoratos v. Maxwell, 351 F.2d 217, 222 (6 Cir. 1965):

> One cannot review what took place in the Court of Common Pleas prior to trial without being impressed that appellant showed himself to be uncommonly wise in the ways of the criminal courts and, from the beginning, was a rather impudent defendant, bent on delaying trial-court proceedings by any and every means he could conjure up, even to the verge of contempt.

Since the appellant himself caused the delays in question, he cannot now be heard to complain.

Affirmed.