**George V. HANSEN, Plaintiff,**

**v.**

**Edwin MEESE, Attorney General of the United States, in both his individual and official capacities, and John Does, officials of the United States Marshals Service, the United States Parole Commission, and other government officials or private parties, in both their individual and official capacities, Defendants.**

**Civ. A. No. 87–0625–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 16, 1987.

---

George V. Biondi, J. Curtis Herge, Herge, Sparks, Christopher & Biondi, Mc-Lean, Va., Darold W. Killmer, William A. Cohan, Denver, Colo., for plaintiff.

Henry E. Hudson, U.S. Atty., Alexandria, Va., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

In this action, a former United States Congressman, George V. Hansen, seeks damages and declaratory and injunctive relief for constitutional and common law torts allegedly inflicted on him by various federal government officials. Defendants' actions were allegedly motivated by a desire to retaliate against plaintiff for his outspoken criticism of government while a congressman. Defendants filed a motion to dismiss or for summary judgment as to plaintiff's constitutional claims. This opinion sets forth the court's reasons for granting summary judgment on plaintiff's Fourth Amendment, equal protection and due process claims. While these rulings were not, at the time, dispositive of plaintiff's entire action, subsequent events combined with these rulings to end this matter. This somewhat tortuous history is set forth in the margin.[1]

1. The rulings dismissing plaintiff's Fourth Amendment, equal protection and due process claims were issued at the conclusion of oral argument on September 18, 1987. Also dismissed at that time were those portions of the Complaint purporting to state a claim under the Federal Tort Claims Act, as the United States was not a party and no administrative claim for relief had been filed as required under 28 U.S.C. § 2675.

Plaintiff filed no affidavits or other materials in opposition to the summary judgment motion, but he did move under Rule 56(f), Fed.R.Civ.P., for additional time to submit and conduct discovery. Plaintiff's grounds were insufficient. It was clear from oral argument that plaintiff sought additional time and discovery "to fish" in the hope of finding something. It is settled that a plaintiff's hope that he will stumble across something if allowed to engage in discovery is an insufficient basis for Rule 56(f) relief. *Sachs Corp. v. United Virginia Bank*, 97 F.R.D. 504, 505 (E.D.Va.1983); *United States v. $5,644,540.00 in U.S. Currency*, 799 F.2d 1357, 1363–64 (9th Cir. 1986); *see also Martin v. Malhoyt*, 830 F.2d 237, 256 (D.C.Cir.1987) (district court's discretion to permit discovery order Rule 56(f) is restricted in cases where public officials assert immunity defense). Nor was plaintiff's confinement a ground for relief. Plaintiff freely chose the time and place for filing suit and could not validly complain that his incarceration made it difficult for him to oppose defendants' motion. In any event, there was no evidence whatever that plaintiff's counsel was in any way impeded from seeing plaintiff at the correctional camp in Petersburg. Plaintiff and his counsel simply chose not to meet.

While ruling on some of plaintiff's claims, the court concluded that plaintiff's First Amendment claims might involve disputed fact issues. Accordingly, the court granted plaintiff an additional week to file affidavits and materials opposing defendants' summary judgment motion on these counts. Further, the court allowed plaintiff an additional week to file materials addressing defendants' contentions that the Attorney General should be dismissed as a defendant and that all defendants' enjoyed immunity on plaintiff's state law claims.

Plaintiff chose not to file these additional materials. Instead, plaintiff elected to file an Amended Complaint omitting the counts on which the court had not ruled and leaving solely those Fourth and Fifth Amendment claims the court had already dismissed from the bench. In an apparent attempt to avoid these bench rulings, plaintiff then sought to file a notice of voluntary dismissal under Rule 41(a)(1)(i), Fed. R.Civ.P. On October 16, the court held that plaintiff's attempt to dismiss counts on which summary judgment had already been rendered was improper. *See Armstrong v. Frostie Co.*, 453 F.2d 914, 916 (4th Cir.1971). At the same time, however, because defendants had not yet filed an answer to the Complaint, the court found that plaintiff was entitled to amend the Complaint to withdraw those counts on which the court had not yet ruled. Rule 15(a), Fed.R. Civ.P.; *see Williams v. Wilkerson*, 90 F.R.D. 168, 170 (E.D.Va.1981). Given that the Amended

*Background*

In 1984, plaintiff was convicted of violating 18 U.S.C. § 1001 for failing to disclose certain financial transactions and was sentenced to five to fifteen months imprisonment. After serving six months, plaintiff was paroled. On January 7, 1987, plaintiff signed a permanent certificate of parole which contained standard restrictions,[2] although he stated that he took exception to certain of the conditions. In particular, plaintiff desired modification of regulations on travel and financial reporting.

The Complaint alleges that on or shortly before April 15, 1987, defendants conspired to apprehend plaintiff and charge him with violating his parole conditions. As part of the alleged conspiracy, United States marshals arrested plaintiff at the Omaha, Nebraska, airport without a warrant as he prepared to return to his home in Virginia, "spirited" him away to a holding facility in Omaha, strip-searched him and held him until the next day.

On April 16, Hansen, confined in handcuffs and belly chains, was flown to Washington, D.C. in a Lear jet. He was placed in the Alexandria city jail under an alias for the alleged purpose of preventing the media, his family, his attorney and his supporters from learning of his whereabouts. While at the city jail, plaintiff claims that special procedures were followed to restrict his access to the media. Further, after a meeting with government officials on April 24, 1987, to discuss his case, plaintiff complains that he was forced to wait in a holding cell for over four hours while members of the media dispersed and to run to a car to avoid cameramen. Allegedly, his safety was subsequently endangered by the marshals' reckless actions.

Plaintiff, who was incarcerated at the Petersburg correctional facility at the time he filed his unverified Complaint, claims that defendants' actions violated his Fourth Amendment right to be free from unreasonable seizures, his Fifth Amendment right to due process of law and equal protection of the laws and his First Amendment rights to access to the media and to be free from retaliation for protected expression.

Affidavits submitted in support of defendants' motion for summary judgment establish that plaintiff's parole officer, John R. Long, made it clear to plaintiff that the parole conditions would have to be met while the request for modification was being considered. Beginning on January 7, 1987, and continuing until his arrest, plaintiff committed a series of parole violations. After his second violation, Long told plaintiff that he intended to recommend revocation of plaintiff's parole. On February 13, 1987, plaintiff committed yet another parole violation, namely an unauthorized trip to Idaho. Long notified the Parole Commission of plaintiff's violations and recommended his arrest on February 17, 1987.

Although plaintiff's parole was not revoked at that time, he received an official letter of reprimand which advised him the any further violations of the conditions of his parole would result in a warrant being issued for his arrest. Despite this warning, plaintiff continued to commit violations. On April 14, plaintiff took an unauthorized trip to Omaha, Nebraska, while a warrant was outstanding for his arrest.

A copy of the warrant was telefaxed to the United States' Marshal's office in Omaha at 4:00 p.m. on April 15, 1987. Pursuant to the warrant, plaintiff was arrested later that evening at the Omaha airport. The arrest occurred at the airport because Roger Ray, the United States Marshal for the Eastern District of Virginia, feared that plaintiff's wife, whom officers had contacted earlier that day regarding her husband's whereabouts, would warn plaintiff, thus allowing him an opportunity to flee.

---

Complaint was limited to the counts on which the court had already ruled, the court's rulings summarized in this opinion were, in the end, dispositive of the entire matter. As discussed herein, the qualified immunity doctrine shields defendants' from plaintiffs damages claim, and because defendants' actions were objectively reasonable, declaratory and injunctive relief are inappropriate.

2. The standard parole restrictions are found at 28 C.F.R. § 2.40.

Ray received directions from the Parole Commission to transport plaintiff to Virginia as soon as possible. The Omaha Marshal's office also urged the expeditious return of plaintiff to Virginia, as supporters were causing a disturbance at the jail where he was being held. Plaintiff was flown east in a Lear jet because it was the safest and fastest available means of transportation. The restraints placed on plaintiff during his trip are standard and are authorized by the United States Marshals' manual. The use of an alias for plaintiff until April 17 was designed to minimize publicity of plaintiff's arrest and thus ensure his safe return to Virginia.

Contrary to plaintiff's assertions, Ray affirms that plaintiff was treated the same as all other prisoners while confined to the Alexandria city jail. Plaintiff was allowed access to the media, within the restrictions placed on all inmates. Additionally, plaintiff had access to a telephone, and his family and friends were permitted to visit him.

The government's submissions also show that on April 24, 1987, a meeting was held between plaintiff and Department of Justice officials to inquire into the circumstances surrounding plaintiff's arrest and incarceration. Subsequently, a report was issued absolving the Marshals Service and the Parole Commission of wrongdoing.

Plaintiff was afforded a parole revocation hearing on April 29, 1987. The hearing examiner recommended that plaintiff's parole be revoked. This recommendation was upheld by the full Parole Commission on July 21, 1987.

Plaintiff submitted no affidavits or materials, aside from a memorandum, in opposition to defendants' motion to dismiss or for summary judgment.

### Analysis

Defendants argue that they are entitled to summary disposition on plaintiff's constitutional claims under the doctrine of qualified immunity. Under this doctrine, federal officials enjoy immunity from civil damages liability for constitutional torts "as long as their actions could reasonably have been thought to be consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The Supreme Court has explained that providing officials with qualified immunity accommodates the competing concerns of allowing injured persons an avenue for vindicating constitutional guarantees and the substantial social costs which damages suits against government officials entail. *Harlow v. Fitzgerald*, 457 U.S. 800, 813–14, 102 S.Ct. 2727, 2735–36, 73 L.Ed.2d 396 (1982); *Anderson*, 107 S.Ct. at 3038.

The Court has consistently urged the lower courts to dispose of meritless allegations of constitutional violations at early stages of litigation. In *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), where the Court adopted a qualified immunity standard, it emphasized that "[i]nsubstantial lawsuits can be quickly terminated by federal courts alert to the possibilities of artful pleading." *Id.* at 507, 98 S.Ct. at 2911. The Court reiterated this admonition in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727; stating that, "Insubstantial lawsuits undermine the effectiveness of government as contemplated by our constitutional structure, and 'firm application of the Federal Rules of Civil Procedure' is fully warranted in such cases." *Id.* at 819 n. 35, 102 S.Ct. at 2739 n. 35 (quoting *Butz*, 438 U.S. at 508, 98 S.Ct. at 2911). And, in *Anderson v. Creighton*, 107 S.Ct. 3034, the Court repeated that:

> One of the purposes of the [qualified immunity doctrine] is to protect public officials from the "broad-ranging discovery" that can be "peculiarly disruptive of effective government." For this reason, we have emphasized that qualified immunity questions should be resolved at the earliest possible stage of a litigation.

*Id.* at 3042 n. 6 (quoting *Harlow*, 457 U.S. at 817, 102 S.Ct. at 2737).

In *Harlow*, 457 U.S. 800, 102 S.Ct. 2727, the Court formulated a qualified immunity standard that allows courts to resolve insubstantial claims on summary judgment. *Id.* at 813, 814–15, 818–19, 102 S.Ct. at 2735, 2736–37, 2738–39; *Anderson*, 107 S.Ct. at 3039 n. 2. This standard recog-

nizes that an inquiry into an officer's subjective intent in evaluating whether his actions are entitled to qualified immunity was inconsistent with the goal of preventing meritless cases from proceeding to trial. *Harlow*, 457 U.S. at 815–16, 102 S.Ct. at 2736–37. Accordingly, the Court held that:

Consistently with the balance at which we aimed in *Butz*, we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

*Id.* at 818, 102 S.Ct. at 2738. Thus, the Court adopted a standard of objective legal reasonableness for determining the validity of a defense of qualified immunity. *Id.* at 819, 102 S.Ct. at 2738.

The Court recently elaborated on this standard in *Anderson v. Creighton*, 107 S.Ct. at 3034. There, the plaintiffs sought to obtain money damages from a law enforcement official who had conducted a warrantless search of their home. The district court granted defendant summary judgment because the undisputed facts showed that ample probable cause supported the search and exigent circumstances excused the officer's failure to obtain a warrant. The court of appeals reversed, finding that the issues of the presence of probable cause and exigent circumstances could not be resolved as a matter of law. Further, the court held that qualified immunity was inapplicable because the right at issue was clearly established. *Id.* at 3037–38. The Supreme Court reversed, stating that the "clearly established law" test should not be applied at a level of generality that would undermine the balance struck by the qualified immunity doctrine. *Id.* at 3038–39. In other words, the relevant question in *Anderson* was not whether the right to be free from warrantless searches is a clearly established right. Rather, it was the "objective (albeit fact-

specific) question whether a reasonable officer could have believed [the defendant's] warrantless search to be lawful, in light of clearly established law and the information the searching officers possessed." *Id.* at 3038, 3040. The Court in *Anderson* also emphasized that the officer's subjective beliefs about his actions are irrelevant. *Id.* at 3040.

The principles of *Harlow & Anderson* applied to the instant case require summary disposition of plaintiff's Fourth Amendment, due process and equal protection claims.

### A. *Fourth Amendment Claim*

Plaintiff contends his arrest at the Omaha airport constituted an unreasonable seizure and consequently violated the Fourth Amendment. In analyzing whether this claim can survive summary judgment, the court must determine whether there was probable cause for the arrest and whether it was conducted in a reasonable manner.

■ The existence of probable cause to arrest cannot be seriously disputed. As plaintiff knew, his certificate of parole contained restrictions which, if violated, would lead to his arrest. Nevertheless, plaintiff intentionally committed a number of parole violations. The fact that the arresting officers did not have the warrant in their possession at the time of arrest is constitutionally irrelevant. An outstanding arrest warrant gives an officer authority to arrest the person named in the warrant. *United States v. Jones*, 696 F.2d 479, 485 (7th Cir.1982), *cert. denied*, 462 U.S. 1106, 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983); *see also Hill v. Bogans*, 735 F.2d 391, 393 (10th Cir.1984) (officer executing a facially valid arrest warrant is entitled to immunity). Further, Rule 4(d)(3), Fed.R.Crim.P., states that the arresting officer "need not have the warrant at the time of the arrest." *See also United States v. Salliey*, 360 F.2d 699, 704 (4th Cir.1966) (arrest by officers who did not have possession of an outstanding warrant was legal).

■ However, plaintiff contends that the *manner* in which he was arrested was

unreasonable and therefore ran afoul of the Fourth Amendment. *See Tennessee v. Garner,* 471 U.S. 1, 7-8, 105 S.Ct. 1694, 1699-1700, 85 L.Ed.2d 1 (1985) (Fourth Amendment reasonableness may depend partially on how an arrest is carried out). Plaintiff complains that the marshals arrested him in Omaha and flew him back to Virginia in a Lear jet instead of waiting to arrest him until he returned to Virginia on a commercial flight. Further, plaintiff contends that placing him under an alias for the flight and his first ten hours at the Alexandria jail were unreasonable.

While the court recognizes that arrests must be conducted in a reasonable manner, these defendants did not violate this principle. Plaintiff's arrest in Omaha while on an unauthorized trip was amply justified by Marshal Ray's fear that plaintiff might attempt to avoid arrest. Moreover, a Lear jet was the most efficient means of travel available at the time.[3] The fact that plaintiff might have preferred a different form of travel or that the means chosen was inconvenient to him is irrelevant (as well as unlikely) if defendants' actions were objectively reasonable. Finally, Marshal Ray's affidavit demonstrates that use of an alias in the transportation of prisoners is not uncommon and that it was appropriate in this case to insure plaintiff's safe return to Virginia. Shortly after plaintiff was booked in the Alexandria jail, the use of an alias ceased.

Whether the incidents are viewed in isolation or in the aggregate, defendants' actions do not, by any stretch of the imagination, rise to a level which the Supreme Court has previously found to be unreasonable under the Fourth Amendment. *See Garner,* 471 U.S. at 11, 105 S.Ct. at 1701 ("[t]he use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable"); *Winston v. Lee,* 470 U.S. 753, 755, 105 S.Ct. 1611, 1614, 84 L.Ed.2d 662 (1985) (surgery under general anesthesia to obtain evidence is unreasonable); *see also Giancola v. West Virginia Dep't of Public Safety,* 830 F.2d 547, 550-51 (4th Cir.1987) (summary judgment on qualified immunity grounds appropriate where aerial surveillance of plaintiffs' property for marijuana cultivation was conducted in a reasonable manner). On the contrary, the defendants' actions, taken in context, were objectively reasonable and well-suited to the circumstances.

Plaintiff also attempts to argue that his arrest was somehow rendered unreasonable by the fact that the defendants' arrested him with a retaliatory motive. However, *Anderson* makes clear that if an officer's conduct was objectively reasonable under the Fourth Amendment, it is improper to conduct an inquiry into the officer's subjective beliefs. *Anderson,* 107 S.Ct. 3034, 3040. In this case, allowing plaintiff's Fourth Amendment claim to survive a motion for summary judgment would be to ignore *Harlow's* proscription that bare allegations of malice should not be permitted to subject officials to the costs of trial or discovery.[4] *See Harlow,*

**3.** Because there was not another United States Marshals' Service aircraft available to transport plaintiff, the alternative to a Lear jet would have been a two-week bus ride along with other prisoners. Ray affirms that the possibility of using a commercial airline was rejected because the airlines are resistant to transporting prisoners. Moreover, such transportation increases the risk of public disturbance, thereby jeopardizing safe and expeditious travel.

**4.** Plaintiff cites *Bennis v. Gable,* 823 F.2d 723 (3d Cir.1987), and *Rakovich v. Wade,* 819 F.2d 1393 (7th Cir.1987), for the proposition that because it is clearly established that federal officials may not retaliate against individuals for the exercise of First Amendment rights, summary disposition is inappropriate. However, both

of those cases dealt with First, rather than Fourth Amendment, violations. *See Bennis,* 823 F.2d at 733; *Rakovich,* 819 F.2d at 1395-97. Moreover, under *Anderson,* this court must ask whether a reasonable officer could have believed plaintiff's arrest to be lawful in light of clearly established Fourth Amendment principles and the knowledge that defendants' possessed at the time of the actions at issue, not whether the right to be free from retaliation for constitutionally protected activity is clearly established. *Anderson,* 107 S.Ct. 3034, 3040.

Finally, it must be noted that the court gave plaintiff an opportunity to file affidavits in support of his First Amendment claims, but plaintiff chose instead to nonsuit them. Thus, the court never reached the merits of these claims.

457 U.S. 800, 817–18, 102 S.Ct. 2727, 2737–38.

### B. *Fifth Amendment Due Process Claim*

 Plaintiff also contends that his arrest and incarceration violated his right to due process of law. Defendants' submissions make clear that plaintiff's due process rights were strictly observed throughout the parole revocation process. In fact, plaintiff does not dispute that he was afforded procedural due process. Instead, plaintiff asserts that his right to substantive due process was denied because he was treated more harshly than circumstances warranted. Assuming that a clearly established Fifth Amendment right not to be subjected to outrageous official conduct exists, this remedy is reserved only for situations in which the actions at issue "shock[] the conscience." *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (forcible pumping of suspect's stomach for evidence of crime offended Fourteenth Amendment's due process clause); *Brower v. Inyo County,* 817 F.2d 540, 544 (9th Cir.1987) (plaintiff who alleged that her deceased son had been the victim of a roadblock designed to force him to crash into a tractor-trailer stated a claim for substantive due process violation); *cf. United States v. Russell,* 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973) (Court may one day be confronted with a situation in which conduct of officials is so outrageous that due process would bar a conviction; such a situation was not presented in that case).

This is not a case in which application of substantive due process principles to invalidate defendants' actions is appropriate. Plaintiff was not a victim of physical abuse during his arrest or incarceration, nor did he receive anything other than standard and reasonable treatment. Moreover, because defendants' actions were consistent with plaintiff's clearly established due process rights, plaintiff's allegations of a retaliatory motive are insufficient to overcome defendants' motion for summary judgment.

### C. *Fifth Amendment Equal Protection Claim*

Plaintiff's equal protection claim is based on the allegation that he was treated more harshly than similarly situated parole violaters because of his political views. *See Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 1072–73, 30 L.Ed. 220 (1886). However, defendants' affidavits show that throughout plaintiff's parole and subsequent incarceration, he was subject to the same restrictions, received the same treatment and was afforded the same protections and benefits as similarly situated individuals. *See Lundblade v. Franzen,* 631 F.Supp. 214, 220 (N.D.Ill.1986) (defendants entitled to summary judgment on plaintiff's claim that delay in releasing him from parole violated his equal protection rights). While the assertion that defendants acted with a retaliatory motive may have been relevant to plaintiff's First Amendment counts, the conduct complained of passes the test of objective legal reasonableness analyzed in light of clearly established equal protection principles. *See Anderson,* 107 S.Ct. at 3038 (citing *Harlow,* 457 U.S. at 818, 819, 102 S.Ct. at 2738, 2739).

### *Conclusion*

Accordingly, defendants are entitled to summary judgment on plaintiff's Fourth and Fifth Amendment claims. An appropriate order has been issued.